# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHERYL WIGGINS, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) ) ) | |
| | ) | |
| v. | ) | C.A. No. N15C-01-186 CLS |
| | ) | |
| PHYSIOLOGIC ASSESSMENT SERVICES, LLC, and | ) ) ) | |
| Defendant/Counterclaim Plaintiff, | ) ) ) | |
| | ) | |
| JORDAN KLEAR, | ) ) | |
| Defendant. | ) | |

Date Submitted: March 2, 2016
Date Decided: June 3, 2016

On Defendant Jordan Klear's Motion to Dismiss for
Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2). **GRANTED.**

## OPINION

John G. Harris, Esquire, Berger Harris LLP, Wilmington, Delaware, Attorney for Plaintiff/Counterclaim Defendant.

Lauren E.M. Russell, Esquire, Margaret M. DiBianca, Esquire, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware, Attorneys for Defendant Jordan Klear.

**SCOTT, J.**

Defendant Jordan Klear ("Klear") has moved to dismiss Plaintiff's, Cheryl Wiggins ("Plaintiff"), amended complaint for lack of personal jurisdiction pursuant to Superior Court Civil Rule 12(b)(2). For the following reasons, Klear's Motion to Dismiss is **GRANTED**.

## Background

This action arises from the termination of Plaintiff's employment at Physiologic Assessment Services, LLC ("PAS"), in December of 2014. Plaintiff filed her initial complaint on January 23, 2015, solely against PAS, asserting claims for breach of contract, promissory estoppel, and violation of Pennsylvania's Wage Payment and Collection Law ("WPCL"). On July 22, 2015, Plaintiff filed an amended complaint, adding Klear as a co-defendant to the action and alleging personal liability against him, as chief executive officer ("CEO") of PAS, for the WPCL claims only. The amended complaint asserts that personal jurisdiction over Klear is authorized by 6 *Del. C.* § 18-109 based on his status as officer and manager of PAS, a Delaware limited liability company. On August 18, 2015, Klear filed his Motion to Dismiss the amended complaint, and Plaintiff filed a Response in Opposition to Klear's Motion on December 7, 2015.[1]

PAS is a Delaware limited liability company that maintains its principal place of business in Pennsylvania and the Corporation Trust Company as

---

[1] On August, 18, 2015, PAS filed its answer, affirmative defenses, and counterclaims to the amended complaint.

2

registered agent for service of process in Delaware. PAS is in the business of providing intraoperative neurophysiologic monitoring ("IONM") services to physicians and medical facilities and employed Plaintiff to provide clinical IONM services on its behalf. Plaintiff is a resident of Pennsylvania and, while employed by PAS, worked primarily at PAS's place of business in Pennsylvania. Plaintiff has never held an ownership interest in or an officer position at PAS.

Klear is also a resident of Pennsylvania and maintains an office at PAS's place of business in Pennsylvania. Klear is CEO of PAS and actively involved in the management of human resources at PAS, specifically the hirings, firings, and salary adjustments of both executive and clinician personnel. Plaintiff entered into an Employment Agreement ("EA") with PAS on November 26, 2013, and Klear signed the EA on behalf of PAS under the title of CEO.

The events leading up to and culminating in the termination of Plaintiff's employment with PAS, which form the basis of Plaintiff's claims against Klear, transpired as follows: In September, 2014, nine months after Plaintiff began working at PAS, Klear informed Plaintiff that he had decided to terminate PAS's Vice President of Clinical Operations and redistribute the job's non-clinical, executive functions. Klear then met several times with Plaintiff and, on September 24th, verbally offered her a raise of $20,000 in exchange for her performing some of the job's executive functions, which Plaintiff accepted. Klear subsequently held

3

a meeting in early October with Plaintiff and other personnel, where he detailed the redistribution of the job's duties, and, shortly thereafter, Plaintiff began performing her new responsibilities. After at least two pay periods thereafter, PAS had yet to pay Plaintiff any of the additional compensation for her increased job responsibilities, and she so informed Klear. In response, Klear promised to discuss PAS's non-payment of Plaintiff's salary increase with PAS's comptroller.

On December 8th, Klear called Plaintiff into a meeting, where he accused her of conspiring with co-workers to solicit PAS employees to work for a yet-to-be-formed business in which Plaintiff had allegedly invested. Following the meeting, Klear issued a letter to Plaintiff, notifying her that, pursuant to § 7(a)(iv) of the EA, PAS was giving her 15 days' notice of its termination of her employment for good cause based on her alleged violation of the non-solicitation covenant in § 9(c) of the EA.

Counts V, VI, and VII of Plaintiff's amended complaint allege violation of Pennsylvania's WPCL by PAS and are asserted against both PAS and Klear.[2] Specifically, Plaintiff alleges that Klear is personally liable (i) for all of the damages to which she is entitled resulting from PAS's violations of Pennsylvania's WPCL, and (ii) as an "employer" for any violations of Pennsylvania's WPCL.[3] In support of these allegations, Plaintiff alleges that Klear was at all relevant times a

---

[2] All other Counts in Plaintiff's amended complaint are asserted against PAS, individually.
[3] Am. Compl. ¶¶ 76, 79, 91, 94, 104, 107.

4

high ranking officer of PAS, who was actively involved in managing PAS's affairs, and that he made the decisions to hire Plaintiff, set her base salary, increase her salary, and fire Plaintiff.[4]

**Parties' Contentions**

Klear asserts that subjecting him, as a nonresident, to personal jurisdiction in Delaware is not authorized by 6 *Del. C.* § 18-109, which is the sole statutory basis to which Plaintiff cites for the Court's personal jurisdiction over Klear, and would violate due process. Specifically, Klear contends that Plaintiff's claims relate solely to a personal contractual dispute with PAS regarding her employment and, thus, do not involve or relate to any duty or obligation owed by him to PAS or to his oversight of PAS's internal business or daily operations.

Further, Klear argues that Delaware law is not inextricably bound up in Plaintiff's claims, because the contract at issue, Plaintiff's Employment Agreement, specifically states that New Jersey law applies, and Delaware has little interest in the resolution of Plaintiff's claims against Klear, because he resides and works in Pennsylvania, Plaintiff worked and currently resides in Pennsylvania, and PAS's primary place of business is in Pennsylvania. Therefore, Klear argues that subjecting him to personal jurisdiction in Delaware would violate due process.

---

[4] Am. Compl. ¶¶ 77-78, 92-93, 105-106.

5

In response, Plaintiff argues that her claims do relate to PAS's business, because they involve the human resource decisions Klear made, which decisions constitute the "day-to-day operations of PAS" and because Klear owes a duty to PAS to ensure that it complies with state and federal wage payment and employment laws. Plaintiff further argues that the due process requirement is also satisfied, because Klear's liability arises under Pennsylvania's WPCL due to his role as CEO and decision-maker at PAS and, thus, he indistinguishable from PAS for purposes of personal jurisdiction.

As to due process, Plaintiff also argues that, as CEO, Klear caused PAS to be formed as a Delaware entity, purposefully availed PAS and himself of the benefits and protections of Delaware, and, therefore, cannot credibly be surprised to have to defend the WPCL claims in this forum. Plaintiff contends that, to hold otherwise, would (i) promote the inefficient result of bifurcating symbiotic claims in separate jurisdictions, (ii) frustrate clear legislative intent, (iii) create a substantial risk of inconsistent judgments, (iv) force Plaintiff to reinstitute the WPCL claims against Klear in Montgomery County, Pennsylvania, while continuing to prosecute the WPCL claims against PAS in nearby Wilmington, Delaware, where Klear will be called as a fact witness, and (v) reward Klear's minimal inconvenience. Alternatively, Plaintiff argues that Klear consented to

6

personal jurisdiction when he, as CEO, allegedly caused PAS to file affirmative claims in this action.

## Standard of Review

On a motion to dismiss for lack of personal jurisdiction pursuant to Superior Court Civil Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the trial court's exercise of jurisdiction over a nonresident defendant.[5] Absent an evidentiary hearing or jurisdictional discovery, the plaintiff need only make a *prima facie* showing that the exercise of personal jurisdiction is appropriate.[6] In making its determination, the Court must accept all well-pleaded factual allegations as true, unless contradicted by affidavit, and draw all reasonable inferences in favor of the plaintiff.[7] However, Delaware courts have warned that "[a]lthough plaintiffs have 'a relatively light burden' to establish a *prima facie* basis for personal jurisdiction, the Court of Chancery has stated '[c]ourt[s] should exercise caution in extending jurisdiction over nonresident defendants whose direct ties to Delaware are, at best, tenuous.'"[8]

---

[5] *Greenly v. Davis*, 486 A.2d 669, 670 (Del. 1984); *Herman v. BRP, Inc.*, 2015 WL 1733805, at *3 (Del. Super. Apr. 13, 2015); *see Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318, 326 (Del. Ch. 2003) (construing Court of Chancery Rule 12(b)(2) in the same way).

[6] *Greenly*, 486 A.2d at 670; *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *5 (Del. Ch. July 14, 2008).

[7] *See Herman*, 2015 WL 1733805, at *3 (citing *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus.*, 871 A.2d 428, 437 (Del. 2005)); *Hartsel v. Vanguard Grp., Inc., et al.*, 2011 WL 2421003, at *7 (Del. Ch. June 15, 2011).

[8] *Wakely Ltd. v. Ensotran, LLC*, 2014 WL 1116968, at *3 (D. Del. Mar. 18, 2014) (citing *Ross Holding & Mgmt. Co. v. Adv. Realty Grp.*, 2010 WL 1838608, at *15 (Del. Ch. Apr. 28, 2010)).

Under the circumstances here, Plaintiff's burden is satisfied if she makes a *prima facie* showing that (1) service of process on Klear, as a nonresident "manager," is authorized by 6 *Del. C.* § 18-109, and (2) jurisdiction over Klear does not violate the Due Process Clause of the Fourteenth Amendment.[9]

## Discussion

### I.  Section 18-109 of the Delaware LLC Act

The "implied consent" provision of the Delaware LLC Act, 6 *Del. C.* § 18-109(a), authorizes service of process of all civil actions brought in the State of Delaware on managers of Delaware LLCs " involving or relating to the business of the limited liability company or a violation by the manager . . . of a [fiduciary] duty."[10]  Recognizing the potential for unconstitutional applications of the "involving or relating to" statutory language when applied to claims against nonresident managers not alleging any breach of fiduciary duty, the Court of Chancery determined in *Rosheim* that "[d]ue process would not be offended if Plaintiffs can show that (1) the allegations against the defendant-manager focus centrally on his rights, duties and obligations as a manager of a Delaware LLC; (2) the resolution of the matter is inextricably bound up in Delaware law; and (3)

---

[9] *Werner*, 831 A.2d at 326; *cf. Herman*, 2015 WL 1733805, at *3.
[10] 6 *Del. C.* § 18-109(a).

8

Delaware has a strong interest in providing a forum for the resolution of the dispute relating to the manager's ability to discharge his managerial functions."[11]

Typically, claims that the Court of Chancery have found capable of surviving the *Rosheim* test involve disputed managerial acts or rights arising under LLC agreements, where it is clear that the relevant "rights, duties and obligations" of the defendant-manager are those owed by the defendant-manager to the LLC.[12] However, it appears that the Court of Chancery has also implied that a plaintiff's claims against a nonresident defendant, who, though not named or designated a manager pursuant to an instrument, but, rather, is treated as one for having participated materially in the management of the LLC pursuant to § 18-109(a)(ii), may involve or relate to the business of the LLC where they relate, not to the rights, duties and obligations of the defendant-manager, but "in any other way to the internal business affairs of [the LLC] or to the running of [the LLC]'s day-to-day operations."[13]

---

[11] *Hartsel*, 2011 WL 2421003, at *9 (citing *Vichi v. Koninklijke Philips Elec. N.V.*, 2009 WL 4345724, at *8 (Del. Ch. Dec. 1, 2009); *Assist Stock Mgmt. L.L.C. v. Rosheim*, 753 A.2d 974, 981 (Del. Ch. 2000)).

[12] *See Cornerstone Technologies, LLC, et al. v. Conrad, et al.*, 2003 WL 1787959, at *12 (Del. Ch. Mar. 31, 2003) (dispute between two managers over their respective responsibilities in governing their LLC); *Rosheim*, 753 A.2d at 980-81 (action for declaratory judgment involving parties who disagreed as to their management rights in a Delaware LLC).

[13] *See Hartsel*, 2011 WL 2421003, at *9 ("I find that Plaintiffs' claims do not involve or relate to [the LLC]'s business in the sense of its internal business as required by the statute and the Due Process Clause."); *Vichi*, 2009 WL 4345724, at *8 ("None of these counts relate to the rights, duties and responsibilities [the defendant] owes to [the LLC], or in any other way to the internal business affairs of [the LLC] or to the running of [the LLC]'s day-to-day operations. Accordingly, none of the counts [the plaintiff] asserts against [the defendant] involve or relate to

Plaintiff's amended complaint asserts, albeit in conclusory fashion, that Klear is both CEO and manager of PAS, which Klear does not explicitly deny, either by affidavit or otherwise; therefore, the Court will assume that he is a manager of PAS.[14] It follows, then, that in order to determine whether personal jurisdiction is, in fact, authorized by § 18-109(a), our inquiry must focus on Plaintiff's claims against Klear—that Klear is personally liable as an "employer" under Pennsylvania law for Plaintiff's damages resulting from PAS's violation of Pennsylvania's WPCL.[15] The issue, thus, becomes whether Plaintiff has alleged any facts from which this Court can infer what duties or obligations Klear owed to PAS, which he may have breached when he allegedly made the decisions to withhold certain wages earned by Plaintiff and to fire Plaintiff, and upon which her claims focus centrally.

---

the business of [the LLC]."); *see also Wakely*, 2014 WL 1116968, at *5-6 (citing *Phillips v. Hove*, 2011 WL 4404034, at *22 (Del. Ch. Sept. 22, 2011)) (discussing the defendants' involvement in business affairs and management of day-to-day operations in determining whether the defendants' qualified as managers and, thus, consented to personal jurisdiction pursuant to § 18-109).

[14] The Court notes that, although Klear's Motion does not explicitly admit to Klear being a "manager" of a Delaware limited liability company, neither does it challenge personal jurisdiction on the basis that Klear is not a "manager."

[15] What is notably absent from Plaintiff's amended complaint is any allegation that Klear breached any duty, contractual or otherwise implied. Furthermore, the Court notes that Plaintiff offers little to no legal support for her argument that her actual claims against Klear relate to the business of PAS and, in fact, cites to no cases at all in the one paragraph dedicated to this argument. Nor has Plaintiff cited to any cases elsewhere which involve claims against a nonresident defendant-manager that arise under non-Delaware law which any Delaware court has found were sufficient to pass constitutional muster. *See* Pl.'s Resp. ¶ 6.

10

While Plaintiff asserts in her Response that Klear owed a duty and was obligated to PAS to "ensur[e] that PAS fully complies with state and federal wage payment and other employment laws," Plaintiff offers no facts in support of this assertion and, thus, the Court is left to assume that it should make this inference based on solely on Plaintiff's allegation that Klear made certain human resource decisions that were in violation of Pennsylvania's WPCL, absent any indication of whether the law would impose such a duty or obligation. Regardless, even if this Court were to make such an assumption, it appears that Plaintiff has not met her burden of showing that her claims against Klear, which are based solely on PAS's violation of Pennsylvania's WPCL and do not arise independently thereunder, "focus centrally" on any duty Klear owed to PAS, when his liability is merely derivative of PAS's. Absent any Court of Chancery precedent in the ballpark, this Court is simply hesitant to find otherwise.[16]

Of course, Plaintiff's claims may still relate to PAS's business where they otherwise relate to the internal business affairs of the LLC or to the running of the LLC's day-to-day operations, provided due process is not violated. Here, it

---

[16] To be sure, this Court finds guidance from the Court of Chancery's decision in *VTB Bank v. Navitron Projects Corporation*, where it held that exercising personal jurisdiction over the defendant pursuant to § 18-109(a) would be inconsistent with due process, because the plaintiff did not assert claims related to the defendant's rights, duties, or responsibilities as a manager of the LLC when it "asserts that it was harmed by the *parallel conduct* of [the defendant] and [the LLC] independent of their corporate structure." 2014 WL 1691250, at *5 (Del. Ch. Apr. 28, 2014) (emphasis added). For the sake of argument, Plaintiff asserts here that she was harmed by PAS's violation of Pennsylvania's WPCL, which violation she alleges Klear caused PAS to make. What is more, Plaintiff does not even plead the breach of contract counts against Klear.

11

appears to the Court that Plaintiff has made a *prima facie* showing that Klear was involved in the running of PAS's day-to-day operations, based on Plaintiff's detailed allegations as to Klear's proximity to PAS's human resource decisions in regard to not only her but also to her co-workers and, even, an executive officer. However, even if this Court were to find that Plaintiff has met her burden of showing that the claims she asserts against Klear, which are premised on PAS's violation of Pennsylvania law and not Klear's, relate to Klear's human resource decisions, Plaintiff makes no argument for how the resolution of these claims, which undisputedly arise under Pennsylvania law, is inextricably bound up in Delaware law, much less how it could be that Delaware has a strong interest in providing a forum for the resolution of the dispute, when Delaware law is not implicated anywhere under the facts.

Interestingly, the only Court of Chancery cases that actually discuss the application of these two factors are cases involving disputes over the actual managerial acts taken pursuant to or rights available under a LLC operating agreement and, thus, in both cases it was axiomatic that the parties would "have to look to Delaware statutory and case law regarding the allocation of managerial power" and, accordingly, it could only be that Delaware maintained a strong interest in providing a forum for their resolution.[17]

---

[17] *See Cornerstone*, 2003 WL 1787959, at *2; *Rosheim*, 753 A.2d at 981.

Therefore, it appears that where, as here, the claims against a nonresident manager-defendant do not directly involve disputed managerial act or rights arising under an LLC agreement, courts must apply the minimum contacts analysis on a case-by-case basis, so as to protect defendants from the risk of unconstitutional applications of § 18-109, and "make 'a realistic evaluation of the relationship' that [the defendant] has established with Delaware to determine whether it is 'keeping with traditional notions of fair play and substantial justice' to require him to defend [the] disputes in [Delaware] court."[18]

## II. Constitutional Analysis

"Under due process analysis, the Court must consider whether the nonresident party had sufficient 'minimum contacts' with the forum state so that jurisdiction over the party 'does not offend traditional notions of fair play and substantial justice.'"[19] Minimum contacts with the forum are present where "[t]he non-resident's conduct and connection to the forum state [are] such that the party 'should reasonably anticipate being haled into court there.'"[20] Once it is

---

[18] *Rosheim*, 753 A.2d at 980 (citing *In re USACafes, L.P. Litigation*, 600 A.2d 43, 52 (Del. 1991)); *see Hartsel*, 2011 WL 2421003, at *9 n.56 ("The test articulated in [*Rosheim*] and *Vichi* may not be exhaustive or exclusive. Plaintiffs, however, have not alleged any facts that suggest they otherwise might satisfy both § 18-109(a) and the Due Process Clause.").

[19] *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[20] *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 294, 297 (1980)).

determined that the defendant has sufficient minimum contacts, "the court should turn its analysis to issues of fairness and justice."[21]

Plaintiff initially contends that due process is satisfied because Klear is indistinguishable from PAS for purposes of personal jurisdiction. This Court respectfully disagrees. While Pennsylvania's WPCL may indeed impose personal liability on high-ranking corporate officers like Klear under these circumstances, as Plaintiff alleges, and it also may well be that Delaware's legislature, too, recognizes the virtues of imposing such liability, personal liability alone is simply not equivalent to personal jurisdiction.[22]

Plaintiff next contends that the facts in *Cornerstone Technolgies, LLC v. Conrad* are similar to the case *sub judice* and, thus, due process would not be violated by asserting personal jurisdiction over Klear. This Court, again, disagrees. In *Cornerstone*, the Court of Chancery was presented with a situation where the plaintiffs made a *prima facie* showing that the defendant was a *founding* member, director, and officer, by virtue of evidence that he signed the LLCs' operating agreements, and, thus, found that the defendant could have formed the two LLCS as Pennsylvania entities, but instead *personally and purposely participated in the*

---

[21] *Cornerstone*, 2003 WL 1787959, at *13 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)).

[22] *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them.").

14

*choice* to invoke the laws of this State.[23] Here, Plaintiff argues that Klear, like the defendant-manager in *Cornerstone*, purposefully participated in forming PAS as a Delaware entity based on the following two assertions, the latter of which having been made in the last footnote in conjunction with a novel reference to Delaware's long-arm statute: (1) "Klear, as CEO, caused PAS to be formed as a Delaware entity," and (2) "Klear signed, as an 'Authorized Person' for PAS, a Certificate of Amendment Changing Only the Registered Office or Registered Agent of a Limited Liability Company, which he caused to be filed with the Office of the Delaware Secretary of State in July 2014." Without more, this Court cannot make the inference that Klear caused PAS to be formed under Delaware law.

Because Plaintiff has not alleged any facts from which this Court can infer that Klear was a founding manager or otherwise participated, purposely or otherwise, in the decision to form PAS under the laws of Delaware, neither allegation constitutes a *prima facie* showing that Klear possesses any minimum contacts with Delaware, which makes *Cornerstone* distinguishable and fails to support Plaintiff's argument that Klear purposefully availed PAS and himself of the benefits and protections of Delaware such that he should reasonably anticipate being haled into this Court, let alone to answer for claims premised on PAS's violation of Pennsylvania state law. Therefore, it appears to this Court that

---

[23] *Cornerstone*, 2003 WL 1787959, at *3, 13.

15

Plaintiff has failed to satisfy her burden of demonstrating that Klear, as a nonresident defendant, has the requisite minimum contacts with Delaware to enable this Court to exercise personal jurisdiction over him with regard to the WPCL claims. Because the constitutional analysis ends once it is determined that the defendant lacks minimum contacts with the forum jurisdiction, this Court declines to reach the issues of fairness and justice.[24]

## III. Consent or Waiver Implied From the Filing of PAS's Counterclaims

"Because the defense of lack of personal jurisdiction is a personal right, it may be obviated by consent or otherwise waived."[25] Plaintiff, therefore, argues in the alternative that Klear is subject to the personal jurisdiction of this Court because he consented. A court may find that a defendant has waived his defense of lack of personal jurisdiction where "the defendant's conduct did not reflect a continuing objection to the power of the court to act over the defendant's person."[26] Specifically, "[t]he personal jurisdiction defense may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct."[27] "Put another way, in determining whether a defendant has waived his

---

[24] However, it bears repeating that "[h]owever minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." *Hanson v. Denckla*, 357 U.S. 235, 251 (1958) (citing *Int'l Shoe*, 326 U.S. at 319).

[25] *Sprint*, 2008 WL 2737409, at *6 (citations omitted); *see Herman*, 2015 WL 1733805, at *5.

[26] *Hornberger Mgmt. Co. v. Haws & Tingle Gen'l Contractors, Inc.*, 768 A.2d 983, 988 (Del. 2000).

[27] *Id.* at 989.

16

defense of lack of personal jurisdiction, or has consented to jurisdiction, it is instructive to look at whether the defendant has abandoned a solely defensive posture and become an actor in the cause."[28]

Plaintiff argues that Klear caused PAS to file "affirmative claims" in this Court, solely by virtue of "his capacity as CEO."[29] For reasons similar to those relied upon by this Court in its finding that Plaintiff failed to meet her burden of making a *prima facie* case that the requirements of due process were satisfied, *see infra*, this Court finds that Plaintiff has also failed to meet her burden of showing that Klear consented to personal jurisdiction. Plaintiff offers no other evidence to support an inference that, because Klear is the CEO of PAS and PAS filed counterclaims in this action, it necessarily follows that PAS's actions should be imputed to Klear in order that Klear be found to have consented to or waived his defense to personal jurisdiction by this Court over *his* person. Neither does Plaintiff provide any case law that stands either for this exact proposition.[30]

---

[28] *Bigelow/Diversified Secondary P'ship Fund 1990 v. Damson/Bircher Partners*, 2001 WL 1641239, at *6 (Del. Ch. Dec. 4, 2001).

[29] Pl.'s Resp. ¶ 13.

[30] The Court notes that Plaintiff cites to *Bigelow/Diversified Secondary P'ship Fund 1990 v. Damson/Bircher Partners* as support for the general rule statement, but does not discuss or otherwise analogize the case at all. In *Bigelow*, the Court of Chancery held that all of the defendants had submitted to the jurisdiction of the court solely by virtue of a motion filed by one defendant, who had not moved to dismiss for lack of personal jurisdiction, because even though the other defendants "were not nominally parties to the Communications Motion, all defendants were real parties in interest in that motion." 2001 WL 1641239, at *6. In so holding, the court relied on the fact that the communications motion was signed by counsel on behalf of all of the defendants, the motion sought the court's blessing over communications with putative class members for the purpose of settling all claims against all defendants, the benefits of the court's

17

Therefore, because Plaintiff has not shown how or why this Court could or should find PAS's actions attributable to Klear for purposes of waiving his defense to personal jurisdiction, Plaintiff has failed to meet her burden of making a *prima facie* showing that this Court has personal jurisdiction over Klear based on consent and/or waiver.

## Conclusion

Accordingly, for the foregoing reasons, Defendant Jordan Klear's Motion to Dismiss for lack of personal jurisdiction is **GRANTED.**

**IT IS SO ORDERED.**

_____
The Honorable Calvin L. Scott, Jr.

cc: Prothonotary

---

ruling on the motion would inure to all defendants, and without having jurisdiction over all of the defendants, it questioned how it could have effectively enforced and policed those communications it would allow by granting the motion. *Id.* at *7. Of course, Plaintiff has not presented any of these arguments to the Court and argues instead that the counterclaims "brought by the opposing *parties* in this action center on the same nucleus of operative facts. Pl.'s Resp. ¶ 14 (emphasis added). As previously mentioned, such an argument is based on nothing more than the conclusory allegation that Klear caused PAS to file its counterclaims, and which is belied not only by the fact that the counterclaims were not signed by counsel on behalf of Klear or all defendants, but also by the fact that none of the affirmative claims themselves inure to Klear's benefit. *See* Def.'s Counterclaims ¶¶ 38-73 (Count I – Breach of Contract; Count II – Unfair Competition; Count III – Tortious Interference with Contractual Relationships; Count IV – Uniform Trade Secrets Act; and Count V – Misappropriation of Confidential Information); *cf. Wallace v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999) ("It is a general principle of contract law that only a party to a contract may be sued for breach of that contract.").