**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ADGS, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. N20C-08-101 EMD CCLD |
| | ) | |
| EMERY SILFURTUN, INC., EMERY | ) | |
| SILFURTUN, EHF, BRØDRENE | ) | |
| HARTMANN A/S, as a successor in | ) | |
| interest to EMERY SILFURTUN, INC., | ) | |
| HARTMANN CANADA INC. d/b/a | ) | |
| HARTMANN NORTH AMERICA, as a | ) | |
| successor in interest to EMERY | ) | |
| SILFURTUN, INC. and JONSSON | ) | |
| & COMPANY, EHF, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: February 21, 2022
Decided: May 11, 2022

*Upon Defendants Brødrene Hartmann A/S and Hartmann Canada Inc., d/b/a Hartmann North America's Motion to Dismiss or Stay*
**GRANTED**

Christian J. Singewald, Esquire, Kelly E. Rowe, Esquire, White and Williams LLP, Wilmington, Delaware. *Counsel for Plaintiff ADGS, Inc.*

Blake Rohrbacher, Esquire, Kelly E. Farnan, Esquire, Valerie A. Caras, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware. *Counsel for Defendants Brødrene Hartmann A/S and Hartmann Canada Inc., d/b/a Hartmann North America*

**DAVIS, J.**

## I.     INTRODUCTION

This is a breach of contract case assigned to the Court's Complex Commercial Litigation Division. Plaintiff ADGS, LLC ("ADGS") deposited $2 million with the Emery Defendants (as defined below) to fund their development of a particular product for ADGS. The Emery

Defendants failed to deliver, so ADGS filed this action to recover the deposit. ADGS subsequently amended its complaint to add Defendants Brødrene Hartmann A/S ("Hartman A/S") and Hartmann Canada Inc., d/b/a Hartmann North America ("Hartman N.A.," and, together with Hartman A/S, the "Hartmann Defendants") as parties, claiming the Hartman Defendants are liable for the debts and obligations of the Emery Defendants. On or about November 24, 2021, the Hartmann Defendants filed their Motion to Dismiss or Stay (the "Motion"). For the reasons explained below, the Motion is **GRANTED** for lack of personal jurisdiction.

## II.    FACTUAL BACKGROUND

### A. THE PARTIES

ADGS is a Texas limited liability company "in the business of industrial and commercial operations."[1] ADGS's principal place of business is in Houston, Texas.[2]

Defendant Emery Silfurtun, Inc. ("ESI") is a Canadian corporation with its principal place of business in Ontario, Canada.[3] Defendant Emery Silfurtun, ehf ("ESE," and, together with ESI, the "Emery Defendants") is an Icelandic corporation with its principal place of business in Reykjavik, Iceland.[4] ESI and ESE are in the business of manufacturing packaging equipment.[5] The CEO for both ESI and ESE is Fridrik Jonsson.[6]

---

[1] Second Am. Compl. at ¶ 1 (D.I. No. 55).
[2] *Id*.
[3] *Id.* at ¶ 2.
[4] *Id.* at ¶¶ 2–3.
[5] *Id.* at ¶¶ 2–3.
[6] *Id.* at ¶ 18.

Hartmann A/S is a Danish corporation with its principal place of business of Gentofte, Denmark.[7] Hartmann N.A. is a Canadian corporation with its principal place of business in Ontario, Canada.[8] Both are in the business of manufacturing molded fiber packaging.[9]

Finally, Defendant Jonsson & Company ehf. is an Icelandic corporation in the business of manufacturing packaging equipment with its principal place of business in Reykjavik, Iceland.[10]

### B. ADGS's DEALINGS WITH THE EMERY DEFENDANTS

ADGS, ESE, and ESI entered into a Purchase Agreement on February 4, 2019 (the "February Agreement").[11] Under the February Agreement, ESE agreed to design, manufacture, and sell to ADGS a unique piece of equipment called the Digital Fiber Forming Production Line DFF 1700 (the "DFF 1700").[12] ADGS paid deposits to ESE totaling $1,000,000 to fund the work on the DFF 1700.[13] ESE was to apply the deposits against the anticipated final purchase price of $3,750,000.[14] ESI was a party to the February Agreement as a Guarantor.[15] Mr. Jonsson, as CEO, executed the February Agreement on behalf of both ESI and ESE.[16]

The parties entered into a second contract on July 18, 2019 (the "July Agreement") after ESE failed to meet various deadlines and obligations under the February Agreement.[17] Mr. Jonsson signed on behalf of ESE.[18] The July Agreement set new deadlines and schedules for the design, manufacture, and delivery of the DFF 1700.[19] ADGS paid ESE another deposit of

---

[7] *Id.* at ¶ 4.
[8] *Id.* at ¶ 5.
[9] *Id.* at ¶¶ 4–5.
[10] *Id.* at ¶ 6.
[11] *Id.* at ¶ 12.
[12] *Id.* at ¶¶ 12–14.
[13] *Id.* at ¶¶ 14, 19.
[14] *Id.*
[15] *Id.* at ¶¶ 15–16.
[16] *Id.* at ¶ 18.
[17] *Id.* at ¶¶ 20–21.
[18] *Id.* at ¶ 22.
[19] *Id.* at ¶ 25.

$1,000,000.[20]  ESE failed to meet the July Agreements' design, manufacture, and delivery deadlines.[21]

On February 4, 2020, ADGS's representatives met with Mr. Jonsson in Texas to discuss ESE's non-performance.[22]  ADGS provided Mr. Jonsson with a formal written notice of ESE's default under the Agreements.[23]  During the meeting, the parties agreed that ESE would sell the "non-compliant and non-operating alleged existing DFF 1700 machine" to a third party and that the proceeds from the sale would be placed in an escrow account under the control of ADGS and at a bank of ADGS's choosing.[24]  ESE represented that "Hunter Emery, located in Ontario" would purchase the device.[25]  The sale never occurred.[26]  Moreover, ESE and ESI have refused to return the $2 million deposit to ADGS.[27]

## C. INITIAL LITIGATION

ADGS filed this action on August 12, 2020.[28]  ADGS's initial complaint brought claims for breach of contract and unjust enrichment against just the Emery Defendants.[29]  The Emery Defendants filed an answer on December 7, 2020.[30]  Counsel for the Emery Defendants moved to withdraw shortly thereafter,[31] which the Court allowed on April 15, 2021.[32]  ADGS moved for a default judgment against the Emery Defendants on July 1, 2021, citing their failure to secure

---

[20] *Id.* at ¶ 23.
[21] *Id.* at ¶ 25.
[22] *Id.* at ¶ 26.
[23] *Id.* at ¶ 27.
[24] *Id.* at ¶ 28.
[25] *Id.* at ¶ 29.
[26] *Id.* at ¶¶ 29–31.
[27] *Id.*
[28] D.I. 1.
[29] *Id.*
[30] D.I. 6.
[31] D.I. 12.
[32] D.I. 19.

substitute counsel and to respond to ADGS's initial discovery requests.[33] The Court granted ADGS's motion on July 30, 2021.[34]

ADGS added the Hartmann Defendants as defendants in its First Amended Complaint, filed June 3, 2021.[35] The First Amended Complaint alleged that Hartmann A/S and/or Hartmann N.A. had acquired ESI in February 2021.[36] ADGS based this claim on an announcement posted to the website of the International Molded Fiber Association ("IMFA").[37]

The Hartmann Defendants informed ADGS and the IMFA that the announcement on the IMFA website was incorrect.[38] In reality, Hartmann A/S and ESE had entered into a limited Asset Purchase Agreement (the "APA").[39] ADGS then filed a Second Amended Complaint with the Hartmann Defendants' consent on October 25, 2021.[40] The Second Amended Complaint added Jonsson & Company as a defendant and updated the allegations against the Hartmann Defendants to reflect the information in the APA.[41]

The Hartman Defendants were not otherwise idle. The Hartmann Defendants filed an action against ADGS in Denmark on May 31, 2021 (the "Danish Action").[42] The Hartman Defendants did this after the Court granted ADGS's motion to file the First Amended Complaint (on May 14),[43] but before ADGS could formally file it (on June 3).[44] In the Danish Action, the Hartmann Defendants sought declarations that: (i) ADGS does not possess any rights over assets

---

[33] ADGS's Mot. for Default J. (D.I. 29).
[34] D.I. 34.
[35] First Am. Compl. (D.I. 24).
[36] *Id.* at ¶ 31.
[37] *Id.* at ¶ 32 ("On February 27, 2021, the [IMFA] website announced that 'the Hartmann Company of Gentofte, Denmark, manufacturer of molded fiber products, has purchased molding machine manufacturer Emery-Silfurtun of Toronto, Canada.'").
[38] Hartmann Defs.' Mot. to Dismiss at 5–6.
[39] *Id.*
[40] *Id.* at 6–7.
[41] *Id.*
[42] ADGS's Opp. to Mot. to Dismiss, Ex. E.
[43] D.I. 23.
[44] D.I. 24.

Hartmann bought from ESI; (ii) ADGS has no claim against the Hartmann Defendants; and (iii) ADGS is liable for any losses the Hartmann Defendants sustain as a result of the pending Delaware action.[45] The Hartmann Defendants obtained a default judgment against ADGS in the Danish Action on December 3, 2021.[46]

### D. THE SECOND AMENDED COMPLAINT'S ALLEGATIONS CONCERNING THE HARTMANN DEFENDANTS

ESI and Hartmann A/S entered into the APA on January 18, 2021.[47] Under the APA, Hartmann A/S purchased the intellectual property rights and technological documentation relating to "Rough Molded Fibre, Thermoforming, and Dryforming"[48] for $4,000,000.[49] The APA specifically excluded any "rights and obligations in relation to [ESI's] current projects."[50] ESI "commit[ted] not to use the names 'Emery' and 'Silfurtun'" after the sale.[51] Finally, the APA acknowledged that ESI was involved in this lawsuit, that ESI "expects this to be settles [sic] out of court with the delivery of a small thermoforming machine to the ADGS [sic]," and that Emery "will have sufficient funds to deliver such a machine."[52]

ADGS asserts a claim for fraudulent transfer against ESI "pursuant to §§ 1304 and 1305 of the Delaware Uniformed Fraudulent Transfer Act,"[53] theorizing that ESI transferred its assets through the APA "with the intent to hinder, delay or defraud" ADGS.[54] Counts V, VI and VII are causes of actions asserted against the Hartmann Defendants. In those counts, ADGS relies upon the APA as the basis of its claims against the Hartmann Defendants. Count V alleges the

---

[45] ADGS's Opp. to Mot. to Dismiss, Ex. E.
[46] Hartmann Defs.' Reply Br. in Supp. of Mot. to Dismiss, Ex. C (D.I. 70).
[47] Second Am. Compl. at ¶ 34.
[48] Hartmann Defs.' Mot. to Dismiss, Ex. A at 1.
[49] *Id.*, Ex. A at 9.
[50] *Id.*
[51] *Id.*, Ex. A at 1.
[52] *Id.* at APA Schedule 10.10.
[53] *See* Second Am. Compl. at ¶¶ 60–71.
[54] *Id.* at ¶ 64.

Hartmann Defendants tortiously interfered with ADGS's contracts with the Emery Defendants by "caus[ing] the Emery Defendants to go out of business, rendering ADGS's efforts to enforce the contracts futile."[55]  Count VI claims the Hartmann Defendants were unjustly enriched by taking the assets of the Emery Defendants free and clear of all liens and encumbrances.[56]  Count VII is a claim, in the alternative, for "successor liability."  In Count VII, ADGS alleges the Hartmann Defendants "crafted the [APA] in such a way as to hinder, delay, and foreclose ADGS's recovery against the Emery Defendants and to defraud ADGS," making the Hartmann Defendants directly liable for the debts and obligations of the Emery Defendants.[57]

The Hartmann Defendants filed the Motion, seeking dismissal of all claims against them. ADGS opposes the Motion.  The Court heard argument on February 21, 2022.[58]  At the conclusion of the hearing, the Court took the Motion under advisement.

### III.    DISCUSSION

The Hartmann Defendants advance four theories for dismissal: (i) lack of personal jurisdiction under Civil Rule 12(b)(2); (ii) insufficiency of process under Civil Rule 12(b)(4); (iii) failure to state a claim under Civil Rule 12(b)(6); and (iv) *forum non conveniens*.[59]  As explained below, the Court finds that ADGS cannot meet its burden of establishing personal jurisdiction over the Hartmann Defendants.  Accordingly, the Court will **GRANT** the Motion pursuant to Civil Rule 12(b)(2).  The Court, therefore, will not address the Hartmann Defendants' additional arguments under Civil Rules 12(b)(4) and (b)(6), or *forum non conveniens*.

---

[55] *Id.* at ¶ 75.
[56] *See id.* at ¶¶ 81–82.
[57] *See id.* at ¶ 96.
[58] D.I. 75.
[59] Hartmann Defs.' Mot. to Dismiss at 1–2.

7

## A. LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction pursuant to Superior Court Civil Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the trial court's exercise of jurisdiction over a nonresident defendant.[60] Absent an evidentiary hearing or jurisdictional discovery, the plaintiff need only make a *prima facie* showing that the exercise of personal jurisdiction is appropriate.[61] In making its determination, the Court must accept all well-pleaded factual allegations as true, unless contradicted by affidavit, and draw all reasonable inferences in favor of the plaintiff.[62] For jurisdictional purposes, the Court may look beyond the pleadings to affidavits and "any discovery of record."[63]

Delaware courts apply a "two-prong analysis" to the issue of personal jurisdiction over a nonresident.[64] The court must first consider whether Delaware's Long Arm Statute is applicable, and next evaluate whether subjecting the nonresident to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment.[65] The second prong focuses on whether the nonresident engaged in sufficient "minimum contacts" with Delaware to require it to defend itself in the courts of this State consistent with the traditional notions of fair play and justice.[66] In order to establish jurisdiction over a nonresident defendant, the nonresident defendant's contacts with the forum must rise to such a level that it should "reasonably anticipate" being required to defend itself in a Delaware court.[67]

---

[60] *Wiggins v. Physiologic Assessment Servs., LLC*, 138 A.3d 1160, 1164 (Del. Super. Ct. 2016).
[61] *Id.* at 1164–65.
[62] *Id.* at 1165.
[63] *VTB Bank v. Navitron Projects Corp.*, 2014 WL 1691250, at *3 (Del. Ch. Apr. 28, 2014).
[64] *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 439 (Del. 2005) (internal citations omitted).
[65] *Id.*
[66] *Id.* at 440.
[67] *Id.*

## B. THE PARTIES' CONTENTIONS

In the Motion, the Hartmann Defendants assert that ADGS fails to satisfy either prong of Delaware's two-prong analysis. First, the Hartmann Defendants argue the long-arm statute is inapplicable because ADGS cannot allege that it suffered any injury in Delaware or that the Hartmann Defendants committed any or omission in Delaware.[68] Second, the Hartmann Defendants contend that: (i) ADGS cannot demonstrate the Hartmann Defendants purposefully availed themselves of this forum, or (ii) this action arises from the Hartmann Defendant's activities in Delaware.[69]

ADGS explains that it asserts two theories in support of personal jurisdiction: "as based on successor liability and as based on the Hartmann Defendants' actions."[70] The first theory is that the Hartmann Defendants "engineered the asset purchase to foreclose all avenues of recovery to which ADGS would avail itself and took the assets free of the debt owed to ADGS."[71] ADGS says the Hartmann Defendants' "fraudulent actions in acquiring the Emery assets" caused them to become the successor-in-interest to the Emery Defendants, such that they "are subject to jurisdiction with regard to the contract between the Emery Defendants and ADGS."[72]

ADGS's second theory is that the Hartmann Defendants' "actions in reaching into a Delaware proceeding to effectively halt the performance and enforcement of a Delaware contract action would impose jurisdiction over [the Hartmann Defendants] based on their independent

---

[68] Hartmann Defs.' Mot. to Dismiss at 13–16.
[69] *Id.* at 15 n.7.
[70] ADGS's Opp. to Mot. to Dismiss at 16–17.
[71] *Id.* at 17.
[72] *Id.*

9

actions."[73]  According to ADGS, "[t]his is precisely the type of tortious conduct anticipated by 10 *Del. C.* § 3104(c)(3)."[74]

### C. ANALYSIS

ADGS bears the burden of establishing a basis for the Court to exercise jurisdiction over the Hartmann Defendants, both of which are non-residents.  The Court holds that ADGS cannot meet its burden.

### 1. ADGS Fails to Establish Personal Jurisdiction Over Hartmann N.A.

ADGS says it has "two theories in support of personal jurisdiction over the Hartmann Defendants: as based on the Hartmann Defendants' action and as based on successor liability."[75] In reality, both theories are directed towards Hartmann A/S and say nothing about Hartmann N.A.

First, the conduct-based theory focuses on "Hartmann's actions in reaching into a Delaware proceeding to effectively halt the performance and enforcement of a Delaware contract."[76]  This refers to the fact that "Hartmann . . . purchased certain assets from Emery" and allegedly "forced [Emery] to close down its business."[77]  The parties to the APA were "Emery Silfurtun Inc." and "Brodrene Hartmann A/S."[78]  Hartmann N.A. was not a party.  Therefore, ADGS's conduct-based theory does not allege any conduct by Hartmann N.A.

Second, the successor liability theory claims that "Hartmann in effect became the successor-in-interest to Emery" through the APA.[79]  Hartmann N.A. was not a party to the APA.

---

[73] *Id.* at 18.
[74] *Id.* at 19.
[75] ADGS's Opp. to Hartmann's Mot. to Dismiss at 17.
[76] *Id.*
[77] *Id.* at 17–18.
[78] *See* Hartmann' Mot. to Dismiss, Ex. A at 8 (Hartmann-ESI APA).
[79] ADGS's Opp. to Hartmann's Mot. to Dismiss at 19.

As such, ADGS's successor liability theory does not describe how Hartmann N.A. could be a successor to Emery.

### 2. ADGS Fails to Establish Personal Jurisdiction Over Hartmann A/S

Again, ADGS advances two theories for personal jurisdiction over Hartmann A/S: a conduct-based theory under 10 *Del. C.* § 3104(c)(3) and a successor liability theory. Both theories fail.

#### i. ADGS's Conduct-Based Theory

Section 3104(c)(3) provides that a Delaware court may exercise personal jurisdiction over any nonresident who "[c]auses tortious injury in the State by an act or omission in this State."[80] "Literally, Delaware law requires both a tortious act within the State and an act or omission within this State."[81] "Thus, for jurisdiction to attach, a plaintiff must establish both elements of subsection (c)(3): an injury and an act or omission in Delaware."[82]

Here, ADGS cannot establish either element with respect to Hartmann A/S. ADGS identifies only one "act or omission" by Hartmann A/S: its entry into the APA with ESI. However, the APA was not negotiated or executed in Delaware;[83] neither party to the APA is a Delaware entity; and Hartmann A/S conducts no business and maintains no presence in Delaware.[84] Consequently, Hartmann A/S cannot be said to have acted *in Delaware* by entering into the APA. Furthermore, the injury that ADGS claims to have suffered is that Hartmann A/S interfered with its lawsuit against the Emery Defendants. More specifically, ADGS claims

---

[80] 10 *Del. C.* § 3104(c)(3).
[81] *Ramada Inns, Inc. v. Drinkhall*, 1984 WL 247023, at *2 (Del. Super. Ct. May 17, 1984).
[82] *Hartsel v. Vanguard Grp., Inc.*, 2011 WL 2421003, at *13 (Del. Ch. June 15, 2011), *aff'd,* 38 A.3d 1254 (Del. 2012); *Rotblut v. Terrapinn, Inc.*, 2016 WL 5539884, at *6 (Del. Super. Ct. Sept. 30, 2016) ("Alleging a tortious injury occurred in Delaware is not enough to satisfy [Section 3104](c)(3). Delaware law requires plaintiffs also to establish that the out-of-state defendant committed an act or omission in Delaware.").
[83] Hartmann Defs.' Mot. to Dismiss, Decl. of Torben Rosenkrantz-Theil at ¶ 12.
[84] *See id.*, Decl. of Torben Rosenkrantz-Theil at ¶¶ 4–11.

Hartmann A/S interfered with its ability to collect on the default judgment that ADGS has already obtained against the Emery Defendants. Even if that is a legally cognizable injury, it would not be an injury in Delaware. ADGS itself is a Texas entity. ESI and ESE are Canadian and Icelandic entities with no assets in Delaware. Any injury relating to ADGS's collection efforts would therefore be felt in other jurisdictions, but in Delaware.

ADGS cannot establish that Hartmann A/S acted in Delaware or that ADGS suffered an injury in Delaware. ADGS therefore cannot establish personal jurisdiction under Section 3104(c)(3).

### ii. ADGS's Successor Liability Theory

ADGS's successor liability theory is that (i) the Court has personal jurisdiction over the Emery Defendants, (ii) Hartmann A/S became the Emery Defendants' successor-in-interest through its APA with ESI, (iii) therefore, the Court has personal jurisdiction over Hartmann A/S. Thus, ADGS's "theory of personal liability is based on a substantive claim: that [Hartmann A/S] is [the Emery Defendants'] successor entity. The Court then must address the substance of successor liability to resolve the jurisdictional issue."[85]

In Delaware, when one company sells or otherwise transfers assets to another company, the buyer generally is not responsible for the seller's liabilities, including claims arising out of the seller's tortious conduct.[86] However, in limited situations, Delaware permits a corporation to be held responsible for debts incurred by another. These situations include: (i) the buyer's assumption of liability; (ii) de facto merger or consolidation; (iii) mere continuation of the predecessor under a different name; or (iv) fraud. [87] ADGS argues for applying the fraud

---

[85] *See Anotek, LLC v. Venture Exch., SCS*, 2021 WL 2577604, at *2 (Del. Super. Ct. June 22, 2021).
[86] *Ross v. Desa Holdings Corp.*, 2008 WL 4899226, at *4 (Del. Super. Ct. Sept. 30, 2008).
[87] *See id.*; *see also Simple Glob., Inc. v. Brathwait Watches, Inc.,* 2022 WL 100363, at *4 (Del. Super. Jan. 10, 2022); *Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954, at *5 (Del. Ch. July 1, 2005).

exception.  As stated previously, ADGS has brought a claim against ESI for fraudulent transfer based on its APA with Hartmann A/S.  According to ADGS, Hartmann A/S's "fraudulent actions in acquiring the Emery assets" caused it to become the successor-in-interest to the Emery Defendants and "subject to jurisdiction with regard to the contract between Emery and ADGS."[88]

The Court explained its concerns about ADGS's successor liability theory during argument.  The Court agreed that the APA possibly could be construed as containing certain indicia of a fraudulent transfer.  However, the Court struggled to understand how the allegedly fraudulent transfer would allow it to exercise jurisdiction over Hartmann A/S.  The APA is a contract between two foreign entities that neither do business in Delaware nor maintain any formal presence there.  Even if the APA *were* a fraudulent transfer, the APA would be a fraudulent transfer with no nexus to Delaware.  The Court asked ADGS to explain the "Delaware hook" here.  ADGS's response was to draw upon language from its conduct-based theory: Hartmann A/S "reach[ed] into a Delaware proceeding" by entering into the APA with ESI.[89]  In effect, ADGS contends the Court can exercise jurisdiction over a foreign entity because it entered into a contract with a *different* foreign entity that was involved in litigation in Delaware.

The Court is concerned with this concept of personal jurisdiction.  ADGS fails to identify any act or injury *in Delaware*.  Moreover, ADGS's theory appears to expand personal jurisdiction beyond its constitutional limits.  Under the minimum contacts analysis, "it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."[90]  The Second Amended Complaint pleads no facts to that effect.

---

[88] ADGS's Opp. to Mot. to Dismiss at 15.

[89] *Id.* at 17.

[90] *Gould v. Gould*, 2011 WL 141168, at *7 (Del. Ch. Jan. 7, 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

13

Perhaps Hartmann A/S should have reasonably anticipated being hailed into court in some other jurisdiction—Texas, Canada or alike—but not Delaware.

ADGS has not met its burden in establishing a statutory basis for personal jurisdiction over either of the Hartmann Defendants in Delaware. Accordingly, the Motion must be granted.

### 3. ADGS also Fails to Establish Minimum Contacts

ADGS's failure to satisfy the first prong of the personal jurisdiction analysis is a sufficient ground to grant the Motion and dismiss the Hartmann Defendants.[91] ADGS also fails under the second prong because it cannot demonstrate that subjecting the Hartmann Defendants to jurisdiction in Delaware would comport with the Due Process Clause of the Fourteenth Amendment. The Second Amended Complaint pleads no facts showing that either of the Hartmann Defendants maintains the requisite minimum contacts with Delaware. The Hartmann Defendants expressly asserted as much in the Motion,[92] which ADGS failed to dispute in its opposition brief. The Motion must be granted for this reason as well.

### IV. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED** for lack of personal jurisdiction under Rule 12(b)(2).

May 11, 2022
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc: File&ServeXpress

---

[91] *See Rotblut*, 2016 WL 5539884, at *4 ("If there is a statutory basis to exercise jurisdiction over the defendant, the Court then will examine whether such exercise is consistent with due process."); *see also Mobile Diagnostic Grp. Holdings, LLC v. Suer*, 972 A.2d 799, 809 (Del. Ch. 2009) (granting motion to dismiss for lack of personal jurisdiction because plaintiff failed to satisfy the first prong).

[92] *See* Hartmann Defs.' Mot. to Dismiss at 15 n.7 ("ADGS cannot demonstrate that the Hartmann Defendants purposefully availed themselves of this forum or that this action results from alleged injuries that arose out of or relate to any activities by the Hartmann Defendants in Delaware.") (internal citations omitted).

14