**ASSIST STOCK MANAGEMENT L.L.C., and ThePageGroup.com, L.L.C., Plaintiffs,**

**v.**

**Iven ROSHEIM, Defendant.**

**Civil Action No. 17610.**

Court of Chancery of Delaware, New Castle County.

Submitted: Jan. 18, 2000.
Decided: Feb. 3, 2000.

Kenneth J. Nachbar, of Morris, Nichols, Arsht & Tunnell, Wilmington, for Plaintiffs.

David J. Ferry, Jr. and Rick S. Miller, of Ferry & Joseph, P.A., Wilmington, for Defendant.

## OPINION

LAMB, Vice Chancellor.

## I. INTRODUCTION

This is an action for declaratory judgment relating to the ownership interests and management rights in Assist Integrated Technologies L.L.C. ("AIT"), a Delaware limited liability company, and in its subsidiary, ThePageGroup.com, L.L.C. ("TPG"), also a Delaware limited liability company. The complaint was filed on November 30, 1999. On December 14, 1999, the defendant filed a motion, pursuant to Court of Chancery Rule 12(b), to dismiss on the basis of, among other matters, lack of personal jurisdiction and insufficiency of service of process. On January 7, 2000, the plaintiffs amended the complaint, principally to add or better articulate the allegation that defendant was presently breaching his fiduciary duties.

This motion requires an inquiry into the scope and constitutionality of 6 *Del. C.* § 18–109, Delaware's implied consent statute for obtaining *in personam* jurisdiction over managers of Delaware LLCs. Having reviewed the parties' respective submissions and the applicable case law, I conclude that this court can exercise personal jurisdiction over the defendant. In short, this dispute hinges entirely on the rights and obligations allotted (by the controlling contract and, where the contract is silent, Delaware statutory and common law) to the managers of AIT and, ultimately, on the managers' exercise of the rights in question. When nonresidents agree to serve as directors or managers of Delaware entities, it is only reasonable that they anticipate that under the circumstances posed in this case, they will be subject to personal jurisdiction in Delaware courts. However, in light of certain defects in the service of process, I will quash the present service of process and require that plaintiff re-serve defendant properly.

## II. FACTUAL BACKGROUND

### A. ASM and Rosheim Form AIT

On March 3, 1999, plaintiff Assist Stock Management L.L.C. ("ASM"), a Delaware limited liability company with its principal place of business in Sarasota, Florida, entered into a Limited Liability Company Agreement with defendant Iven Rosheim to form AIT (the "AIT Agreement"). Rosheim and ASM made equal initial capital contributions of $100 in exchange for their respective 50% stakes in AIT. Stephen H. Watkins is the sole member of ASM. Rosheim lives in Sarasota, Florida and has no contact with Delaware other than through his involvement in AIT.

### B. The Management and Structure of AIT

The AIT Agreement named Watkins (as designee of ASM) and Rosheim as the only two members of its Board of Managers. The AIT Agreement made it impossible for either member to remove the other or its designee from his position as manager.

The two person Board of Managers, which required unanimity of its members to act, retained broad control over AIT's affairs.[1] The Board could, however, appoint officers, granting them specific authority by written delegation. Absent such express delegation, officers would enjoy "such power and authority as persons holding such titles in a corporation would be expected to possess by virtue of their office."[2] In the AIT Agreement, the Board of Managers named Watkins as President and Rosheim as Vice President and Secretary but did not further specify the scope of the officers' respective authority.

Notwithstanding the Board of Managers's broad authority or any power delegated to officers or exercisable by a future majority member,[3] Section 15 of the AIT Agreement listed specific transactions that could be approved only by unanimous agreement of all members. This list included, for example, any material transaction with a member or manager, dissolution, significant acquisition, merger, or issuance of interests to and admission of new members.

Although neither member was obliged to make additional capital contributions, Section 7(b) provides that "[u]pon any additional Capital Contribution made by any Member, the Membership Interests of the members shall be adjusted accordingly." Through June 1999, ASM provided $53,000 of additional capital to AIT. One aspect of the present dispute is whether, in light of ASM's additional contributions, its interest in AIT was properly adjusted to 99.81%,

leaving Rosheim with only the remaining 0.19% interest.[4] According to plaintiffs, as president of AIT and the sole member of ASM (the alleged majority member of AIT), Watkins had the power to control AIT on all matters not covered in Section 15's unanimous consent provision. Rosheim contends that he remains a 50% owner.

## C. TPG's Formation and Search for Financing

On May 3, 1999, AIT executed a Limited Liability Company Agreement creating plaintiff TPG (the "TPG Agreement"). Pursuant to Article V of the TPG Agreement, AIT, as TPG's sole member,[5] controlled the affairs of TPG, except to the extent that it delegated authority to others. Watkins was thus appointed president of TPG and given specific authority to "execute for [TPG] any contracts or other instruments which [AIT] has authorized to be executed."[6]

Shortly after its inception, TPG issued additional membership interests in exchange for several million dollars from outside investors. According to plaintiffs, "[e]ach new member was admitted to TPG with the consent of all members of TPG, and each new member's admission was reflected in the records of TPG."[7] The complaint also alleges that Rosheim had knowledge of and consented to the admission of each new member. Certain of these new investors were appointed as officers of TPG.

---

1. AIT Agreement, § 13(a)

2. *Id.* § 13(d).

3. Under § 14(b), any member who obtained a majority share of AIT's membership interests could act by written consent in lieu of a meeting of members.

4. The alleged recalculation is as follows: ASM's total invested capital of $53,100 would represent 99.81% of AIT's total capitalization of $53,200.

5. Certain documents relating to TPG's equity ownership stated ASM's and Rosheim's specific percentages of TPG's equity while later documents refer only to AIT's interest. This discrepancy will be relevant to the merits of the dispute, but has no bearing at this stage.

6. Although not relevant to the present dispute, defendant contends that he was appointed as TPG's Chief Technology Officer.

7. Compl. ¶ 19.

## D.  The Dispute

In the fall of 1999, the relationship between Rosheim and Watkins deteriorated. Watkins told Rosheim that his services were no longer needed.  On November 15, 1999, Rosheim sent a letter to Watkins, asserting that Rosheim was a 50% owner of AIT,[8] that AIT was the 100% owner of TPG, and that AIT could not admit new members to TPG without Rosheim's consent, which had not been provided.[9]

Rosheim's assertions have cast doubt as to the validity of the newly issued TPG membership interests.[10]  The discord within AIT's two-member Board is also inhibiting TPG's efforts to obtain additional financing and to conduct a public offering of its stock.

It is not entirely clear whether Rosheim claimed that his consent was needed in his capacity as an alleged 50% owner of AIT or in his capacity as a manager of AIT.  Section 15 of the AIT Agreement (requiring unanimous member approval of certain transactions) does not on its face apply to the admission of new members to any subsidiary of AIT.[11]  Thus, Rosheim's position appears to rest on an understanding of the scope and nature of his power as a manager of AIT, as those powers are delineated in the AIT Agreement and, where the Agreement is silent, by Delaware statutory and common law.

In summary, this case presents two disputes, one relating to the ownership interests of AIT and one relating to Rosheim's right, *as a manager of AIT*,[12] to provide or withhold consent to the admission of additional members into TPG.  In arguing this motion, defendant stated that the claims are intertwined so that, if the court can assert personal jurisdiction over Rosheim to hear the consent dispute, it can also hear the ownership dispute.

## III.  ANALYSIS

### A.  The Parties' Contentions

Plaintiffs contend that Watkins (as president of AIT) or ASM (the alleged majority owner of AIT) could approve TPG's issuance of membership interests without Rosheim's (the Board's) consent and that Rosheim's erroneous assertion of a contrary power is harming both entities.  Alternatively, plaintiffs contend that Rosheim, in fact, gave such consent in his managerial capacity.

After reviewing defendant's opening brief on this motion, plaintiffs, in order "to avoid any possible doubt about the nature of these claims," amended their complaint to expressly allege breaches of fiduciary duty.[13]  Plaintiffs claim that Rosheim is actively breaching his fiduciary duties and misusing his position as a manager of AIT by his assertion that he either never provided consent or was withdrawing consent.

---

8.  As stated above, AIT's argument is that in light of its $53,000 in contributions to AIT, compared with Rosheim's $100 initial deposit, Rosheim's ownership in AIT has dwindled to below 1%.

9.  Actually, Rosheim concedes that he consented to admission of at least one investor, but contends that he was not consulted with regard to subsequent admissions.

10.  A lawsuit has been filed by one of the new investors against Rosheim (but not naming AIT or ASM as defendants) seeking a declaration as to the validity of the issued TPG interests.

11.  This statement is an initial observation and in no way limits Rosheim's ability to argue

that, in fact, Section 15 does protect a right to consent by all members.

12.  AIT's counsel conceded that under the AIT Agreement, even if Rosheim's pecuniary interest is reduced to less than 1%, he cannot be removed from his position as one of two managers.

13.  Rosheim's November 15, 1999 letter, according to plaintiffs, also included an offer by Rosheim to withdraw his claims in exchange for substantial cash payments and a 15% interest in TPG.  This fact is only pertinent to the present matter because it serves as one basis for plaintiff's claim that Rosheim is using his position as a manager of AIT to further his personal financial interests.

This amounts to a breach, it is claimed, because Rosheim is thereby acting disloyally and threatening substantial injury to the business of AIT and TPG.

In his opening brief, Rosheim claims that plaintiffs' initial contentions related only to a contractual dispute over the terms of the AIT Agreement and, thus, do not provide a basis for the exercise of personal jurisdiction over Rosheim in his capacity as a manager. In his reply brief, Rosheim further argues that plaintiffs' later alleged fiduciary duty claim was illogical and ineffective, amounting to little more that a complaint about positions taken by him after his termination by Watkins. In the absence of a claim actually alleging that he breached a fiduciary duty, Rosheim reiterates his position that the narrow issue of contract interpretation does not provide the basis for asserting *in personam* jurisdiction.

I conclude that this court has jurisdiction over the defendant under either of plaintiffs' theories.

### B. The Jurisdictional Inquiry

■ In *In re USACafes, L.P. Litigation,* Chancellor Allen recognized that determining whether a director or manager is subject to the jurisdiction of this court requires a "determination of the constitutionality of requiring [him] to defend that claim ... and a determination whether a statute of this state authorizes assertion of such power." [14] The first question is one of minimum contacts [15] and the second of

statutory construction. It is the plaintiffs' burden to establish that the exercise of *in personam* jurisdiction is lawful.[16]

The parties agree that Rosheim has no contact with Delaware beyond his involvement as founder and manager of AIT and that those contacts do not support the assertion of long-arm jurisdiction over him in this case. Thus, the only basis for obtaining jurisdiction over Rosheim is the "implied consent" statute, 6 *Del. C.* § 18–109, which provides in part:

> A manager ... of a limited liability company may be served with process ... in all civil actions or proceedings brought in the State of Delaware involving or relating to the business of the limited liability company or a violation by the manager ... of a duty to the limited liability company, or any member of the limited liability company.... A manager's ... serving as such constitutes such person's consent to the appointment of the registered agent of the limited liability company ... as such person's agent upon whom service of process may be made.... [17]

The language of this statute, of course, suggests the exercise of jurisdiction over Rosheim in an action properly alleging a breach of fiduciary duty in his managerial capacity.[18] The more difficult question is whether, and if so, in what circumstances it permits the exercise of jurisdiction in the other disputes involving or relating to the business of AIT.

---

**14.** Del. Ch., 600 A.2d 43, 50 (1991).

**15.** *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980).

**16.** *Id.,* 600 A.2d at 47.

**17.** § 18–109 (bolding added).

**18.** Indeed, if the complaint is read as validly alleging a breach of fiduciary duty against Rosheim in his capacity as a manager of AIT, there is little question that § 18–109 will subject him to the jurisdiction of this court for purpose of litigating that claim. While I am inclined to view the allegations of plaintiffs'

amended complaint as potentially stating a claim for breach of fiduciary duty, I do not rest my decision on that basis alone. Rather, as discussed *infra,* I conclude that Rosheim is properly subject to the jurisdiction of this court because plaintiffs' "contract" based dispute concerns the "rights, duties and obligations" of Rosheim and Watkins as managers of AIT—issues that are inextricably bound up in Delaware law and as to which Delaware has a strong interest in providing a forum for resolution. *See Armstrong v. Pomerance,* Del. Supr., 423 A.2d 174 (1980); *Hana Ranch, Inc. v. Lent,* Del. Ch., 424 A.2d 28 (1980).

If one interprets the bolded language above broadly, the mere fact that Rosheim is a manager of AIT and that the suit involves or relates to the business of AIT would provide a basis for asserting jurisdiction. Somewhat analogously, the literal wording of 10 *Del. C.* § 3114, the consent statute applying to corporate directors, assumes consent to all actions involving the corporation in which the director is a "necessary or proper party." [19] In *Hana Ranch, Inc. v. Lent,* [20] however, this court recognized that a literal reading of this clause of § 3114 would violate "traditional notions of fair play and substantial justice," as defined by the United States Supreme Court in *International Shoe Co. v. State of Washington,* [21] and its progeny.

In *Hana Ranch,* Chancellor Marvel noted that § 3114 was drafted in response to *Shaffer v. Heitner,* [22] which held that Delaware's sequestration statute violated due process. [23] The Chancellor then stated that "it is the rights, duties, and obligations which have to do with service as a director of a Delaware corporation which make a director subject to personal service in Delaware" and not simply that the defendant is both a director and a "proper party" to that case. [24]

After commenting on the Delaware Supreme Court's opinion in *Armstrong v. Pomerance,* [25] which stated that Delaware's interest in actively overseeing the conduct of directors of Delaware corporations is significant and substantial, Chancellor Marvel endorsed "a construction of 10 *Del. C.* § 3114 which limits its application only to those actions directed against a director of a Delaware corporation for acts on his part performed only in his capacity as a director." [26] The complaint at issue in that case stated "no cause of action ... against the non-resident director defendant *in his capacity as director,* " [27] but rather challenged conduct taken as a stockholder. Chancellor Marvel thus determined it unconstitutional to use § 3114 as a basis for asserting *in personam* jurisdiction over the defendant.

Chancellor Allen closely examined the holding of *Hana Ranch* in *In re USA-Cafes.* [28] After elaborating on the constitutional framework established by the U.S. Supreme Court's relevant decisions, [29] the Chancellor noted that Delaware "has a strong interest in the effective administration of the law governing corporations and limited partnerships organized under its laws." [30] Stating that a rule providing for personal jurisdiction only in claims for breach of fiduciary duty to the corporation of which defendants are directors is too imprecise, Chancellor Allen stated that the constitution required "a specific judg-

---

**19.** § 3114 is substantially similar to § 18–109. In light of the dearth of cases construing § 18–109, I will look to the cases construing § 3114, recognizing that the different choice of words in § 18–109 may warrant a different analysis.

**20.** Del. Ch., 424 A.2d 28 (1980).

**21.** 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

**22.** 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

**23.** *Hana Ranch,* 424 A.2d at 30.

**24.** The language of the first clause of § 3114 differs from the first clause of § 18–109 in that, instead of requiring that the claim relate to the business of the corporation, § 3114 requires that the defendant be a director and be a "proper party" to the claim involving the corporation.

**25.** Del.Supr., 423 A.2d 174 (1980).

**26.** *Hana Ranch,* 424 A.2d at 30.

**27.** 424 A.2d at 31 (emphasis added).

**28.** 600 A.2d at 50–53.

**29.** *Id.* at 50–52 (citing, *inter alia, International Shoe,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490; *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

**30.** *Id.* at 51 (citing *Armstrong v. Pomerance,* Del.Supr., 423 A.2d 174, 177 (1980)).

ment concerning fairness considering all of the particular circumstances."[31] As such, Chancellor Allen took a "realistic evaluation of the relationship the individual defendants ... have established with Delaware," concluding that in the circumstances, the exercise of personal jurisdiction would not offend traditional notions of fairness.[32]

The Chancellor then conducted the second aspect of the inquiry, i .e., whether § 3114 permitted service of process on the directors for the asserted claims. Chancellor Allen commented as follows:

> Because the first clause of Section 3114[33] so plainly is susceptible to unconstitutional application, this court in *Hana Ranch* construed the word "or" to mean "and," in effect reading this clause out of the statute. An alternative approach might have been to give the legislature's word its ordinary meaning, but to protect against unconstitutional use of the statute on a case-by-case basis— employing the test of the *International Shoe* line of cases to do so. The doctrine of *stare decisis* however, removes that as a possible course at this date.[34]

Despite hinting that, if analyzed in a vacuum, asserting jurisdiction under the first clause of § 3114 may have been proper, Chancellor Allen decided that the case at hand fit into the second clause (resting on claims of fiduciary breaches) thus warranting the exercise of jurisdiction in any event. Although the case law under § 3114 is informative in construing § 18–109, I note that *stare decisis* does not necessarily remove "as a possible course" my ability to read the first clause of § 18–109 as an independently viable basis for

asserting jurisdiction over managers of limited liability companies.

I am concerned both with a different statute and one that is differently worded. Most importantly, the wording of the first clause of § 18–109 does not include the "necessary or proper party" language found in § 3114 that caused the clear concern that the statute may have been overbroad.[35] Admittedly, the "involving or relating to" language found in § 18–109 can, too, be susceptible to too broad an application. I believe, however, that "[p]rotection against unconstitutional application of [the] statute[ ] could be provided on a case-by-case basis by applying the minimum-contacts analysis mandated by due process."[36]

## C. The Nature of this Dispute Allows the Court to Exercise Personal Jurisdiction Over Rosheim Regardless of Whether He Is Alleged to Be Breaching His Fiduciary Duties

■ In light of the foregoing, I will make "a realistic evaluation of the relationship" that Rosheim has established with Delaware to determine whether it is "keeping with traditional notions of fair play and substantial justice" to require him to defend this dispute in this court.[37] As I see it, the preliminary questions posed by this dispute are as follows: Is AIT's decision to allow TPG to admit new members one for AIT's Board of Managers to decide? Can the president of AIT make this decision? Can a majority member of AIT compel this decision? Did Rosheim, in fact, consent? The questions posed run to the core of the governing structure created for AIT, a Delaware LLC.

---

31. *Id.* at 52.

32. *Id.*

33. As stated, the first clause of § 3114, read literally, provides for jurisdiction in cases involving the corporation in which the director is "a proper party."

34. *In re USACafes,* 600 A.2d at 53 (citations omitted).

35. *Compare* § 3114 *with* § 18–109.

36. Donald J. Wolfe & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 3–5(a)(2)(v), 149 (1998).

37. *In re USACafes,* 600 A.2d at 52.

The two managers of AIT cannot agree on an interpretation of their respective rights and obligations. If the managers cannot resolve the matter, AIT's business, relying exclusively on TPG and TPG's ability to obtain financing, may be seriously affected. Moreover, the AIT Agreement does not explicitly state whether AIT's consent must be by an act of the Board of Managers or by one of its officers. As such, because the parties will have to look to Delaware statutory and case law regarding the allocation of managerial power, this action is "inextricably bound up" in Delaware law.

The bulk of the case law relying on *Hana Ranch*'s view of the substantial interest defined in *Armstrong* assumes that the state's interest is only in redressing injuries allegedly caused by fiduciary *misconduct*. As I see it, the failure of co-managers to agree as to the scope of their respective rights and obligations in their capacity as managers (or their exercise or performance of those rights and obligations) is also a matter of substantial interest to this state. The controlling agreement relies on Delaware law to delineate those rights and obligations, and the state has a compelling interest in the resolution of disagreements about them.

In light of my reading of the case law, I conclude that this court can properly exercise *in personam* jurisdiction over Rosheim to adjudicate the matter because: (1) the allegations against Rosheim focus centrally on his "rights, duties and obligations"[38] as a manager of a Delaware LLC; (2) the resolution of this matter is "inextricably bound up in Delaware law;"[39] and (3) Delaware has a strong interest in providing a forum for disputes relating to the ability of managers of an LLC formed under its law to properly discharge their respective managerial functions.[40] When he became a manager of a Delaware limited liability company, Rosheim impliedly consented to being sued in a Delaware court to adjudicate disputes so inherently intertwined with that fiduciary position. Further, because Rosheim agreed in the course of litigating this motion that if jurisdiction is proper to resolve the consent dispute, this court could also hear the ownership dispute, and because the ownership question is related in some respect to the consent matter,[41] I will hear that claim as well.

## D. Defects in the Service of Process

Defendant alleges that dismissal is warranted because the plaintiffs failed to properly comply with the service of process required by § 18–109(b). Specifically, the statute indicates that service is accomplished by serving the registered agent of the company.[42] "In addition, the Prothonotary or the Register in Chancery . . . shall, within 7 days . . . [mail] copies of the process . . . addressed to such manager . . . at his address last known to the party desiring to make such service."[43] Conceding that service was provided the registered agent, defendant argues that plaintiffs failed to provide the Register with Rosheim's "address last known to" plaintiffs.

Rosheim lived on a boat docked in Sarasota, Florida. Plaintiffs alleged that, prior to filing this action, they learned that Rosheim had moved off his boat. Plaintiffs' counsel represented during oral argument that his clients determined that no forwarding address had been supplied to

**38.** *Hana Ranch,* 424 A.2d at 30.

**39.** *Armstrong v. Pomerance,* Del.Supr., 423 A.2d 174 (1980).

**40.** Of course, as discussed, *supra,* I also find it appropriate to exercise jurisdiction over Rosheim in connection with the alleged breach of fiduciary duty.

**41.** *See Manchester v. Narragansett Capital, Inc.,* Del. Ch., C.A. No. 10822, mem. op. at 17–18, 1989 WL 125190, Chandler, V.C. (Oct. 18, 1989).

**42.** § 18–109(b).

**43.** *Id.*

the post office. Rather than undertaking an exercise in futility, plaintiffs sent a copy of the process to Burton L. Raimi, Esquire, Rosheim's attorney with regard to certain matters relating to AIT. Raimi immediately responded, stating that he had no authority to accept process for Rosheim. At that point, plaintiffs contacted Rosheim on his cell phone. "At Rosheim's request, copies of the complaint and other relevant pleadings were sent to him by express mail at the post office box that he gave as his address." [43] Plaintiff argues that his efforts complied with the letter and the purpose of the statute.

Defendant acknowledges that he received actual notice of the lawsuit. He explains, however, that under applicable precedent, strict compliance with the statute is required and plaintiffs' failure to send notice to defendant's *last known address* results in a defect in service of process, warranting dismissal.[44]

It is certainly true that plaintiff did not send notice to defendant's last known address, as required by the statute. I also note that § 18–109, like § 3114, is a consent statute, providing that when a nonresident accepts a position as a manager of a Delaware LLC, that nonresident consents that service upon his statutory agent will amount to *in personam* jurisdiction over him for any claims covered by the statute. Service was properly effected upon Rosheim's registered agent. Further, Rosheim requested copies of documents relating to the lawsuit when he was contacted by cell phone and actually received them.

I note that if I dismiss the case on this basis, plaintiff will merely reinstate the suit, sending process to Rosheim's new address. In cases such as this one, "courts have broad discretion to dismiss the action or to retain the case but quash the service that has been made on defendant." [45] Because "there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly," [46] I will maintain the action, quash the technically defective service, and instruct plaintiff to re-serve defendant. Naturally, defendant's time to answer will run from the date of proper service.

### E. Forum Non Conveniens

■ Finally, defendant argues that in light of the overwhelming hardship and inconvenience of litigating this matter in Delaware, this court should dismiss this case on *forum non conveniens* grounds. "The dismissal of an action on the basis of the [*forum non conveniens* ] doctrine, and the ultimate defeat of the plaintiff's choice of forum, may occur only in the rare case in which the combination and weight of the factors to be considered *balance overwhelmingly* in favor of the defendant." [47] Here, defendant fails to carry this very high burden.

[5] A *forum non conveniens* analysis requires the court to consider: (1) the ease of access of proof; (2) the availability of compulsory process for witnesses; (3) the possibility of a view of the premises; (4) whether the controversy is dependent upon the application of Delaware law which the courts of this state more properly should decide that those of another jurisdiction; (5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and (6) all other practical considerations which would make the trial

---

**43.** Pl. Ans. Br. at 13.

**44.** Defendant cites *Purnell v. Dodman*, Del.Super., 297 A.2d 391, 395 (1972); *Griffin v. Granger*, Del.Supr., 306 A.2d 725, 727 (1973); *Casson v. Matt Slap Subaru, Inc.*, Del.Super., 1988 WL 77761 at *1, 1988 Lexis 249 at *4, Martin, J. (Nov. 23, 1988).

**45.** Charles A. Wright and Arthur R. Miller, *Wright & Miller, Federal Practice and Procedure: Civil 2d* § 1354, 288 (1990).

**46.** *Id.* at 289.

**47.** *Kolber v. Holyoke Shares, Inc.*, Del.Supr., 213 A.2d 444, 447 (1965) (emphasis added).

easy, expeditious and inexpensive.[48]

█ Defendant argues that the evidence and witnesses are in Florida. Depositions will require employment of "the cumbersome and expensive commission process" to issue trial and deposition subpoenas and witnesses will have to travel to Delaware or attorneys will have to travel to Florida. On the other hand, the evidence consists primarily of documents.[49] Further, defendant has not identified a single non-party witness and the court has compulsory process over all parties. Neither of the first two factors helps defendant.

Defendant concedes that the view of the premises is irrelevant to the analysis. Despite defendant's argument that this case turns entirely on questions of contract law, he does not argue that another jurisdiction's law applies. While another court could construe Delaware law, this factor does not weigh in defendant's favor. The fact that no first-filed suit involving the same parties is pending in another jurisdiction weighs heavily against defendant. Plainly, it is not enough for defendant simply to assert that he is *considering* the filing of a suit in Florida raising tort and breach of contract claims. None of the next three factors help defendant.

The final factor presents a mixed analysis. In defendant's favor is the lesser burden and expense that may be avoided by trying the suit in Florida. There is admittedly added cost for all witnesses and parties because they all reside in Florida. Plaintiffs' assertion that they will agree to take all depositions in Florida is of little help because Delaware attorneys may have to appear to take and defend those depositions and the trial will, of course, be conducted in Delaware. On the other hand, when managers of an entity cannot agree on the scope of their respective powers and that disagreement threatens the entity's continued viability, each party has a significant interest in resolving the matter as soon as possible. The action in this court is subject to an expedited schedule, with the trial to take place on March 1, 2000. There can be no assurance that another court will resolve these critical matters quickly. All in all, defendant has not carried his difficult burden of showing that this is the rare case in which dismissing the action is warranted on *forum non conveniens* grounds.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss on the basis of a lack of personal jurisdiction, failure to properly serve process and *forum non conveniens* is DENIED. As described above, however, plaintiffs' original service of process is QUASHED. In light of the expedited schedule, plaintiffs are further instructed to re-serve defendant in accordance with the requirements 10 *Del. C.* § 18–109(b) within five (5) days from entry of this Opinion.

---

48. *Taylor v. LSI Logic Corp.*, Del.Supr., 689 A.2d 1196, 1198–99 (1997).

49. *See Asten v. Wangner*, Del. Ch., C.A. No. 15617, letter op. at 4, 1997 WL 634330, Steele, V.C. (Oct. 3, 1997) ("Modern methods of information transfer render concerns about transmission of documents virtually irrelevant.")