# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SCOTT SCHWEITZER, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. N19C-07-031 MAA |
| | ) | |
| v. | ) | |
| | ) | |
| LCR CAPITAL PARTNERS, LLC | ) | |
| and SURESH RAJAN, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: December 13, 2019
Decided: March 9, 2020

Defendant Suresh Rajan's Motion Dismiss Counts II and III of Complaint:
**Granted**

Defendant LCR Capital Partners, LLC's Motion Dismiss Counts II, III, and IV of
Complaint: **Granted in Part, Denied in Part**

Plaintiff Scott Schweitzer's Motion Dismiss Counterclaims: **Granted**

## MEMORANDUM OPINION

Sean A. Meluney, Esq., Matthew D. Beebe, Esq., BENESCH FRIEDLANDER
COPLAN & ARONOFF, LLP, Wilmington, Delaware, Scott R. Matthews, Esq.
WINDELS MARX LANE & MITTENDORF, LLP, New York, New York,
*Attorneys for Plaintiff.*

James M. Yoch, Jr., Esq., Michael A. Laukaitis II, Esq., YOUNG CONAWAY
STARGATT & TAYLOR, LLP, Wilmington, Delaware, Lindsay Neinast, Esq.
LITTLER MENDELSON, PC, Washington, DC, *Attorneys for Defendant.*

**Adams, J.**

1

This case involves the alleged breach of an employment agreement executed by Plaintiff Scott Schweitzer ("Schweitzer") and Defendant LCR Capital Partners, LLC ("LCR Capital"). Several counts are asserted in the Complaint and LCR Capital's Counterclaim related to the termination of Schweitzer's employment and the alleged retaliation against Schweitzer for reporting wrongdoing by Defendant Suresh Rajan ("Rajan"). For the reasons stated herein, the Court **GRANTS** Rajan's Motion to Dismiss, **GRANTS** in part and **DENIES** in part LCR Capital's Motion to Dismiss, and **GRANTS** Schweitzer's Motion to Dismiss.[1]

## FACTS AND PROCEDURAL BACKGROUND[2]

**1. Facts alleged in support of Mr. Schweitzer's Complaint**

On April 2, 2015, LCR Capital and Schweitzer executed the employment agreement (the "Employment Agreement"). The Employment Agreement provided the terms of Schweitzer's employment as LCR Capital's Chief Financial Officer. As CFO, Schweitzer agreed to personally guarantee a Capital One credit card account that LCR Capital used for business purposes. Schweitzer alleges he was required to

---

[1] Schweitzer did not move to dismiss Count III of LCR Capital's Counterclaim for breach of the implied covenant of good faith and fair dealing, and it therefore remains in this case.

[2] The Court accepts as true the facts alleged in the Complaint and Counterclaim for the purpose of reviewing the Motions to Dismiss. *See Bowden v. Pinnacle Rehabilitation and Health Center*, 2015 WL 1733753, at *1 (Del. Super. April 8, 2015); *Stayton v. Clariant Corp.*, 10 A 3.d 597, 601 (Del. 2010).

do this because LCR Capital lacked sufficient business credit to obtain a credit card account without an Operating Partner personally guaranteeing the account.

On August 10, 2016, LCR Capital adopted a profits interest units plan ("PIU Plan"). The PIU Plan memorialized the terms by which partners and other parties could acquire profits interest units in LCR Capital. On September 1, 2016, LCR Capital's Operating Partners held a meeting where there was a discussion about the award of profits interest units in LCR Capital. Schweitzer, Rajan (the CEO and Manager of LCR Capital), and LCR Capital's Chief Operating Officer and co-President Joseph Haggenmiller ("Haggenmiller") were among those present at the meeting.

On November 29, 2016, LCR Capital released a revised capitalization table and the Amended PIU Plan. The Amended PIU Plan authorized the PIU Plan Committee, comprised of Haggenmiller, Rajan and Schweitzer, to administer the Amended PIU Plan. Schweitzer alleges that Rajan was "contractually barred" from unilaterally administering the Amended PIU Plan.

According to Schweitzer, it was agreed that any additional profits interest units issued under the Amended PIU Plan would only dilute Rajan's interest in LCR Capital. Rajan acknowledged this agreement as late as November 9, 2017 when he distributed the capitalization table that reflected the agreement.

3

In August 2018, Schweitzer learned that, at some point during 2018, Rajan attempted to renege on the agreement and administer unilaterally the PIU Plan to dilute all of the Operating Partners. Schweitzer confronted Rajan about this during a telephone call, but Rajan hung up the telephone and refused to speak with him. Schweitzer reported Rajan's conduct to the other Operating Partners. Rajan did not deny the agreement nor his attempt to dilute the Operating Partners. Schweitzer believes that Rajan intended to instill falsely the belief that the interest profits units held by the Operating Partners would not be further diluted.

According to the Complaint, Rajan, as CEO and Manager of LCR Capital, "set the tone" for LCR Capital's business practices. Schweitzer alleges that, under Rajan's leadership, there were many instances where executives acted in a manner inconsistent with good corporate morals, charged improper expenses to the company and subjected the company to regulatory scrutiny and jeopardy. Allegedly, there were no consequences for these executives because they remained in Rajan's "good graces." Rajan awarded and protected Operating Partners who exhibited Rajan's "indifference to fiduciary responsibility." Rajan also allegedly fostered a culture of "fear and reprisal" toward Operating Partners who refused to conduct themselves in a similarly dishonest fashion.

As an example, Schweitzer points to conduct during a meeting of LCR Capital's Investment Advisory Council, which comprises certain Limited Partners.

4

In late 2018, Schweitzer learned that Rajan and two co-presidents of LCR Capital, Haggenmiller and Sherman Baldwin ("Baldwin"), used financial projections in a meeting with the Investment Advisory Council that Schweitzer did not prepare, despite Schweitzer being assigned to create financial projections. Schweitzer believes this was done in an effort to present a more optimistic picture of the company's business prospects than a realistic projection would show.

In August 2018, LCR Capital began removing Schweitzer from the Senior Leadership Team. According to the Complaint, Rajan began removing Schweitzer's duties, reducing Schweitzer's authority, ignoring Schweitzer and "freezing" Schweitzer out of LCR Capital business decisions. Rajan made the decision to take these actions in his capacity as CEO and Managing Member of LCR Capital, despite objections from other Operating Partners. Schweitzer alleges that, under Rajan's direction and control, LCR Capital violated the Employment Agreement by assigning Schweitzer duties inconsistent with (and in diminution of) his position, authority and responsibilities as CFO.

On May 7, 2019, two Operating Partners told Schweitzer that LCR Capital would be terminating his employment. LCR Capital changed the locks on the company office door and directed Schweitzer to work from home, forcing Schweitzer to be based at a location other than LCR Capital's principal place of

employment from May 8, 2019 through May 31, 2019. Schweitzer alleges that these actions eliminated his ability to perform his employment duties.

On May 8, 2019, Schweitzer received a Notice of Termination for Cause ("Notice of Termination") from LCR Capital.[3]  The Notice of Termination states that Schweitzer's employment would be terminated under Employment Agreement § 1(c)(iv), based on "willful misconduct or gross negligence with respect to the performance" of Schweitzer's duties to LCR Capital.[4]

The Notice of Termination provides three grounds for termination for "Cause:" (1) failure to make timely payments to a former Limited Partner of the American Opportunity Franchise Fund who had executed a Withdrawal Agreement; (2) failure to be at LCR Capital's offices during normal business hours; and (3) the unilateral and unauthorized cancellation of LCR Capital credit cards.

Schweitzer alleges that the grounds cited are "baseless and without merit." First, Schweitzer made payments to the former Limited Partner when directed to do so by LCR Capital's General Counsel and when LCR Capital had the funds available to make such payments.  Second, LCR Capital was aware that Schweitzer was out

---

[3] The Employment Agreement provides that Schweitzer's employment could be terminated for Cause, Without Cause, for Good Reason, or Without Good Reason. During Oral Argument, counsel for LCR Capital explained that the Notice of Termination simply indicates LCR Capital's *intent* to terminate Schweitzer's employment at the time. Tr. 23:12–15.  Ultimately, LCR Capital did not terminate Schweitzer's employment.

[4] Schweitzer contests the allegation of "willful misconduct or gross negligence."

of the office intermittently for physical therapy, exercise or other excusable reasons. Finally, with regard to the claim about the LCR Capital credit cards, Schweitzer reduced the spending limit of the Capital One account only after being informed that he was being terminated from LCR Capital. Schweitzer alleges that he had no obligation to maintain the account. Schweitzer also believed that the account would be used improperly, based on previous experiences Schweitzer had with employees abusing the account. Schweitzer believes that LCR Capital's course of dealing demonstrates that the attempt to terminate him for Cause was wholly retaliatory.

Schweitzer alleges that even if he had been terminated for Cause, he would be entitled to a lump-sum payment equal to the sum of all Accrued Obligations through the Date of Termination, as defined in the Employment Agreement.

On May 31, 2019, Schweitzer gave notice that he was terminating his employment for Good Reason pursuant to the Employment Agreement. The Employment Agreement provides that, if Schweitzer's employment were to be terminated Without Cause or for Good Reason, Schweitzer would be entitled to a lump-sum payment equal to the sum of all Accrued Obligations through the Date of Termination. Schweitzer would also be entitled to a severance package consisting of an amount equal to his then-current annual base salary plus an amount equal to three times the annual COBRA premium charged by LCR Capital in the calendar year in which the termination occurred. Schweitzer alleges that because of his Good

Reason termination, LCR Capital was obligated to make these payments under the Employment Agreement. LCR Capital has not paid these amounts, which were allegedly due to Schweitzer by June 30, 2019.

The Complaint alleges that Rajan had the ultimate authority and control within the company to pay wages. Rajan is the Managing Member of LCR Capital and purportedly makes all of the decisions with respect to internal business affairs and the treatment of senior executives. Schweitzer believes that Rajan personally made the decision for LCR Capital to not pay the wages owed as described above. In doing so, Schweitzer argues, Rajan exposed LCR Capital to a claim for unpaid wages.

## 2. Facts alleged in support of LCR Capital's Counterclaim

LCR Capital alleges that Schweitzer, as the Chief Financial Officer for LCR Capital from April 2, 2015 to June 3, 2019, was an agent and fiduciary of LCR Capital. Schweitzer had a "special relationship of trust and confidence" with LCR Capital because of his position as CFO.

Although LCR Capital's claim for breach of fiduciary duty has been withdrawn, the grounds asserted in support of that claim were incorporated into LCR Capital's claim for negligence, including:

> 1. Schweitzer failed to plan and implement adequate risk management measures to protect LCR Capital financial assets, including failing to obtain appropriate Directors' and Officers' insurance and General Liability coverage for the Company;

8

2. Schweitzer missed three consecutive payment deadlines to an important limited partner of an LCR Capital-managed fund without communicating with the limited partner or internally with LCR Capital management, which damaged LCR Capital's business relationship and caused the limited partner to issue attorney demand letters;

3. Schweitzer represented LCR Capital at business meetings while appearing to be intoxicated;

4. Schweitzer reported to work impaired and/or distracted to the point where he did not function properly as an LCR Capital employee, including an incident in which Schweitzer crashed his car into a stone pillar while attempting to exit the parking lot, and causing Westport police to issue a warning for an at-fault accident and requiring Schweitzer to surrender his driver's license;

5. Schweitzer failed to develop adequately and oversee LCR Capital's employee benefit plans, including "failing to take ownership" of setting up a 401K plan in a timely manner despite being asked to do so;

6. Schweitzer failed to create reliable financial projections, including a failure to account for contractual regional center liabilities related to key LCR Capital project, which resulted in substantial under-budgeting of company expenses for 2018; and

7. Schweitzer made multiple errors in the underlying assumptions supporting the 2018 Master Cash Runway Model, which resulted in unexpected cash shortfalls at the end of 2018.

LCR Capital also has a Counterclaim for defamation. In a nutshell, LCR Capital alleges that Schweitzer threatened to publish and did publish false information to one or more third parties concerning LCR Capital engaging in "unlawful conduct in running the affairs of the company." According to LCR Capital, these false statements caused LCR Capital to suffer injury and were intended to cause harm to the reputations of Rajan and LCR Capital.

9

### 3. Procedural Posture

Schweitzer filed the Complaint on July 3, 2019 against LCR Capital and Rajan alleging: (1) breach of Employment Agreement against LCR Capital; (2) violation of Connecticut General Statute § 33-1336 against LCR Capital and Rajan; (3) violation of Connecticut General Statue § 31-71c and § 31-72 against LCR Capital and Rajan; and (4) indemnification against LCR Capital.

On August 9, 2019, Rajan filed a Motion to Dismiss Counts II and III of the Complaint on the grounds of lack of personal jurisdiction and improper venue.

On August 9, 2019, LCR Capital filed a Motion to Dismiss Counts II, III and IV of the Complaint. LCR Capital also filed an Answer to the Complaint and Counterclaim that same day.[5]

On September 9, 2019, Schweitzer filed his Responses to Defendants' Motions to Dismiss, along with his own Motion to Dismiss Defendants' Counterclaims and Answer and Affirmative Defenses to Defendants' Counterclaims.

---

[5] Rajan joined LCR Capital in its Motion to Dismiss Counts II, III and IV of the Complaint. During oral argument, counsel for defendants confirmed that the Counterclaims were filed solely on behalf of LCR Capital, and not Rajan. Tr. 62:2–4; Def.'s Suppl. Br. ¶ 13.

The Court held oral argument on the pending motions on November 6, 2019. During oral argument, the Court ordered additional briefing on certain issues. This matter is now ripe for decision.

## ANALYSIS

On a motion to dismiss under Superior Court Civil Rule 12(b)(6), the Court "will accept all well-pleaded factual allegations in the complaint as true, and will accept even vague allegations as 'well-pleaded' if they provide defendants notice of a claim."[6] The Court "will draw all reasonable inferences in favor of the plaintiff" and will deny the motion "unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[7] The Court will "ignore conclusory allegations that lack specific supporting factual allegations."[8]

### 1. Schweitzer's Second Cause of Action is dismissed.

After additional briefing, Schweitzer has withdrawn his Second Cause of Action for breach of Connecticut General Statutes §33–1336 upon finding that the statute does not apply to LLCs.[9] Therefore, the Court need not address this issue further and Schweitzer's Second Cause of Action is dismissed.

---

[6] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings, LLC*, 27 A.3d 531, 536 (Del. 2011).

[7] *Id.*

[8] *Rogers v. Bushey*, 2018 WL 818374, at \*4 (Del. Super. Feb. 7, 2018) (quoting *Turf Nation, Inc. v. UBU Sports, Inc.*, 2017 WL 4535970, at \*5 (Del. Super. Oct. 11, 2017)).

[9] Pl.'s Suppl. Br. ¶ 19.

## 2. Schweitzer's Third Cause of Action against Rajan is dismissed because the Court does not have personal jurisdiction over Rajan.

Schweitzer asserts that this Court has personal jurisdiction over Rajan under 6 *Del. C.* § 18–109(a), which provides:

> A manager […] of a limited liability company may be served with process in the manner prescribed in this section in all civil actions or proceedings brought in the State of Delaware involving or relating to the business of the limited liability company or a violation by the manager […] of a duty to the limited liability company or any member of the limited liability company [….] A manager's […] serving as such constitutes such person's consent to the appointment of the registered agent of the limited liability company (or, if there is none, the Secretary of State) as such person's agent upon whom service of process may be made as provided in this section. Such service as a manager […] shall signify the consent of such manager […] that any process when so served shall be of the same legal force and validity as if served upon such manager […] within the State of Delaware and such appointment of the registered agent (or, if there is none, the Secretary of State) shall be irrevocable.[10]

On a motion to dismiss under Superior Court Civil Rule 12(b)(2), Schweitzer has the burden to make a *prima facie* showing that the Court may exercise personal jurisdiction over Rajan.[11] There is a two-step process for making this showing: (1) service of process on Rajan, as a nonresident "manager," is authorized by 6 *Del. C.* §18–109; and (2) jurisdiction over Rajan does not violate the Due Process Clause of

---

[10] 6 *Del. C.* §18–109(a).
[11] *Wiggins v. Physiological Assessment Services, LLC*, 138 A.3d 1160, 1164 (Del. Super. 2016) (citing *Greenly v. Davis*, 486 A.2d 669, 670 (Del. 1984); *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *5 (Del. Ch. July 14, 2008)).

the Fourteenth Amendment.[12]  "In making its determination, the Court must accept all well-pleaded factual allegations as true, unless contradicted by affidavit, and draw all reasonable inferences in favor of the plaintiff."[13]

In order to satisfy due process requirements, Schweitzer must show that: (1) the claims against Rajan "focus on his rights, duties and obligations as a manager of a Delaware LLC; (2) the resolution of the matter is inextricably bound up in Delaware law; and (3) Delaware has a strong interest in providing a forum for the resolution of the dispute relating to the manager's ability to discharge his managerial functions."[14]

The parties do not dispute that Rajan is a "manager" of LCR Capital.[15]  The Court therefore focuses its analysis on determining whether applying the implied consent provision to Schweitzer's claim against Rajan would offend due process.[16] First, under the *Hartsel* test, the Court must determine whether the allegations against Rajan focus centrally on his rights, duties and obligations as a manager of a

---

[12] *Wiggins*, 138 A.3d at 1165 (citing *Werner*, 831 A.2d at 326).

[13] *Id.* (citing *Herman*, 2015 WL 1733805, at *3; *Hartsel v. Vanguard Grp., Inc.*, 2011 WL 2421003, at *7 (Del. Ch. June 15, 2011)).

[14] *Id.* (quoting *Hartsel*, 2011 WL 2421003, at *9; *Assist Stock Mgmt. L.L.C. v. Rosheim*, 753 A.2d 974, 981 (Del. Ch. 2000)).

[15] *See* Defs.' Suppl. Br. ¶ 16.

[16] *Republic Bus. Credit, LLC v. Metro Design USA, LLC*, 2016 WL 3640349, at *9 (Del. Super. June 29, 2016).

Delaware LLC.[17]  The only remaining claim against Rajan is the Third Cause of Action, which alleges Rajan violated Connecticut General Statutes §§ 31–71c and 31–72.[18]  Schweitzer asserts that Rajan's duty to not expose LCR Capital to litigation over unpaid wages under §§ 31–71c and 31–72 satisfies the first prong of the three-part *Hartsel* due process test.

In a recent case from this Court involving similar issues, the Court held that the plaintiff did not meet her burden in showing that her claim against the manager-defendant focused centrally "on any duty owed by the manager to the company."[19] In *Wiggins v. Physiologic Assessment Services, LLC*, the plaintiff asserted that the Court had personal jurisdiction over the manager-defendant because the claim involved the manager-defendant's duty not to expose the company-defendant to liability under Pennsylvania's Wage Payment and Collection Law ("WPCL") for unpaid wages.[20]  The Court found that the claims under the statute were "based solely on [the company-defendant's] violation of Pennsylvania's WPCL" and did not "arise independently thereunder."[21]  The claim was not focused centrally on the manager-defendant's duty to the company-defendant and was "merely derivative" of the

---

[17] *Wiggins*, 138 A.3d at 1165 (quoting *Hartsel*, 2011 WL 2421003, at *9; *Assist Stock Mgmt. L.L.C. v. Rosheim*, 753 A.2d 974, 981 (Del. Ch. 2000)).
[18] Compl. ¶¶ 90–104; Pl.'s Suppl. Br. ¶ 8.
[19] *Wiggins*, 138 A.3d at 1166.
[20] *Id.*
[21] *Id.*

company-defendant's liability to the plaintiff. The Court found that, therefore, the assertion of personal jurisdiction over the manager-defendant did not comport with due process.

Here, Schweitzer makes similar arguments based on an out-of-state wage statute. Schweitzer's allegations that Rajan caused LCR Capital to violate the wage statutes are not sufficient to show that the claims focus centrally on a duty Rajan owed *to LCR Capital* as a manager, for the purposes of satisfying due process requirements. Schweitzer's claim, therefore, fails the first prong of the *Hartsel* due process test and the Court cannot exercise personal jurisdiction over Rajan.[22]

Even if Schweitzer could show that his claims against Rajan focused on Rajan's rights, duties and obligations as a manager of a Delaware limited liability company, Schweitzer has failed to satisfy the other two prongs of the *Hartsel* due

---

[22] The sole case plaintiff relies upon for his argument for exercising personal jurisdiction over Rajan is *Yu v. GSM Nation, LLC*, 2018 WL 2272708 (Del. Super. April 24, 2018). In *Yu*, the plaintiff alleged that the defendant-manager fraudulently transferred money loaned to the LLC by the plaintiff to a separate entity controlled the by defendant-manager. *Id.* at *11. The Court held that while not fiduciary duty claims, these claims, "[i]f proven, such conduct would be in contradiction to [the defendant-manager's] obligations as a manger of Delaware limited liability company and traditional notions of justice and fair play require the Court to hold [him] accountable for misusing his position." *Id.* The Court further held that the dispute was "so inherently intertwined with his fiduciary position." *Id.* The same cannot be said here. Although Schweitzer tries to tie Rajan in by way of his fiduciary position, when distilled down, Schweitzer's claims arise out of a breach of the Employment Agreement (a claim he asserts only against LCR Capital) and violations of the Connecticut wage statute. These are not comparable to the claims and allegations asserted in *Yu*.

process test. Counts II and III of the Complaint contain allegations involving two Connecticut residents and conduct that occurred in Connecticut, allegedly in violation of a Connecticut wage statute. The only connection to Delaware law is through LCR Capital's status as a Delaware LLC and the application of the Employment Agreement's definitions of "Good Reason" termination and "wages."

Schweitzer alleges that this matter must be litigated in Delaware because entitlement to severance requires proof of Good Reason termination under the Employment Agreement. In making this allegation, however, Schweitzer appears to be relying on the implied consent provision of the Employment Agreement, to which Rajan is not a party.[23] This is not sufficient to show that this claim is "inextricably bound up in Delaware law," nor that Delaware "has a strong interest in providing a forum for the resolution of the dispute relating to the manager's ability to discharge his managerial functions."[24] Rajan's connection to Delaware with respect to Schweitzer's claim against him is tenuous. The Court "should exercise caution in extending jurisdiction over nonresident defendants with tenuous ties to Delaware."[25] Such an extension is not warranted here and would violate due process requirements

---

[23] See Pl.'s Suppl. Br. ¶ 9; Pl.'s Opp'n to Rajan's Motion to Dismiss ¶ 10.
[24] *Wiggins*, 138 A.3d at 1165 (quoting *Hartsel*, 2011 WL 2421003, at *9; *Assist Stock Mgmt. L.L.C. v. Rosheim*, 753 A.2d 974, 981 (Del. Ch. 2000)).
[25] *Id.* (quoting *Wakely Ltd. v. Ensotran, LLC*, 2014 WL 1116968, at *3 (D. Del. Mar. 18, 2014)).

16

under the Fourteenth Amendment.[26] Because the Court cannot exercise personal jurisdiction over Rajan without violating due process requirements, Rajan's Motion to Dismiss is granted.

### 3. Schweitzer states a claim against LCR Capital for violation of Connecticut General Statutes § 31–71c and § 31–72.

Connecticut wage statutes "do not purport to define the wages due; they merely require that those wages agreed to will not be withheld for any reason."[27] These statutes do not provide a method of calculating wages, but rather provide remedies for when employment wage agreements are violated.[28] A determination of whether compensation may be considered "wages" and the method of calculating the amount of wages are derived from the employer-employee agreement.[29]

LCR Capital argues that Schweitzer cannot claim severance as a part of the "wages" defined under §§ 31–71c and 31–72. Schweitzer argues that the Employment Agreement expands the traditional definition of "wages" to include severance and, therefore, expands the term under the statutes.

---

[26] *Id.* (quoting *Hartsel*, 2011 WL 2421003, at *9; *Assist Stock Mgmt. L.L.C. v. Rosheim*, 753 A.2d 974, 981 (Del. Ch. 2000)).

[27] *Geysen v. Securitas Security Services USA, Inc.*, 142 A.3d 227, 234 (Conn. 2016) (citing *Mytych v. May Dept. Stores Co.*, 793 A.2d 1068 (Conn. 2002); *State v. Lynch*, 948 A.2d 1026 (Conn. 2008)).

[28] *Id.*

[29] *Li Poa M.D. v. Stamford Hosp.*, 2010 WL 2926007, at *4 (Conn. Super. May 10, 2010).

Schweitzer has alleged several facts, discussed above, in support of his assertion that he is entitled to compensation associated with Good Reason resignation under the Employment Agreement, including the diminution of Schweitzer's "authority, duties or responsibilities," the assignment of duties inconsistent with Schweitzer's position, and the violation of the Employment Agreement by LCR Capital.[30]  Viewing these facts as true and finding that the Employment Agreement may expand the definition of "wages" under §§ 31–71c, § 31–72, the Court denies LCR Capital's Motion to Dismiss Schweitzer's Third Cause of Action.

4. **Schweitzer's Indemnification Claim under the Operating Agreement is Dismissed Without Prejudice.**

The Operating Agreement indemnification provision states that LCR Capital shall indemnify a Member, Manager, Officer, agent, employee, or former Member, Manager, Officer or other person acting for LCR Capital:

> against expenses, including attorney's fees, actually and necessarily incurred by them *in connection with the defense or settlement of any action, suit, or proceeding*, in which they, or any of them, are made parties, or a party, by reason of being or having been Members, managers, or Officers of the Company, except in relation to matters as to which any such Member, Manager, or Officer, either current or former, or personal shall be adjudged in such action, suit or proceeding to be liable for willful misconduct in the performance of duty and to such matters as shall be settled by agreement predicated on the existence of such

---

[30] Compl. ¶ 22 (quoting Employment Agreement § 1(c)). See Compl. ¶¶ 57–59.

liability as set forth therein, and may advance such expenses, all in accord with the law of Delaware.[31]

Schweitzer alleges that this provision applies to indemnify him for expenses, attorney fees and costs in connection with bringing this action.[32]

Schweitzer alleges that he was "forced" to bring this action against LCR Capital and Rajan as a result of their wrongful conduct toward Schweitzer.[33] Schweitzer also alleges that the Employment Agreement contains a more expansive indemnification provision and has requested leave to amend his Complaint to include reference to the Employment Agreement, should the Court find that the Operating Agreement provision does not apply.[34]

The Complaint fails to state a claim under the indemnification provision of the Operating Agreement. Schweitzer's claim for indemnification arises out of his filing the complaint (an offensive action). The indemnification provision of the Operating Agreement, however, applies only to costs and fees associated with the "defense or settlement" of an action.[35] Counsel for Schweitzer admitted during oral

---

[31] Compl. ¶ 111 (quoting Operating Agreement § 6.10) (emphasis added).
[32] Compl. ¶ 112.
[33] Compl. ¶ 110.
[34] Pl.'s Opp'n to Def. LCR Capital's Mot. to Dismiss ¶ 16.
[35] As one leading treatise on Delaware practice states, "[o]ne of the touchstones of Delaware's alternative entity enabling statutes is their emphasis on flexibility and private ordering with respect to the terms of an entity's organizational documents. Those principles are reflected in indemnification and advancement provisions of the enabling statutes." Donald J. Wolfe, Jr. and Michael A. Pittenger, CORPORATE AND

argument that bringing this case offensively does not qualify as "defense or settlement."[36]  The Court will grant Schweitzer's request to re-plead this claim with the inclusion of reference to the Employment Agreement, as there is no prejudice at this early stage to LCR Capital.

### 5. LCR Capital's claim for negligence is duplicative of its fiduciary breach claim.

As discussed above, Rajan has clarified that he is not asserting a counterclaim.[37]  The Court will, therefore, only address Schweitzer's Motion to Dismiss as it relates to LCR Capital.  As LCR Capital recognized, the Court does not have subject matter jurisdiction over LCR Capital's claim for breach of fiduciary

---

COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY, SECOND EDITION, § 9.02[k] at 9-53 (2018) (citations omitted).  Here, the indemnification provision applies narrowly to fees associated with the "defense or settlement" of an action. C.f. *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 343 (Del. 1983) (holding that a bylaw, which contained no limitation on the type of action for which an individual, otherwise qualified under the bylaw was entitled to indemnification, entitled the plaintiff who initiated a suit against the company to indemnification).  The parties when drafting the LLC Agreement had the freedom to expand the definition so that it would have included affirmative claims such as those brought by Schweitzer, but they did not.  See *Donohue v. Corning*, 949 A.2d 574, 580 (Del. Ch. 2008) (holding that the language "defense or disposition of" in an advancement and indemnification provision "would be rendered mere surplusage if it were not interpreted as requiring the action to be defensive or responsive") (citations omitted).

[36] Tr. 57:8–16, 58:9–12.

[37] Tr. 62:2–4; Def.'s Suppl. Br. ¶ 13.

20

duty.[38]  LCR Capital has withdrawn its breach of fiduciary duty claim and it is dismissed without prejudice.[39]

Schweitzer asserts that LCR Capital's Counterclaim for negligence is duplicative of the fiduciary breach claim and is similarly barred for lack of subject matter jurisdiction.  The Court agrees and will dismiss Count II of LCR Capital's Counterclaim.

The case law cited by Schweitzer directly addresses this issue.  In *Prospect Street Energy*, the Court found that, "despite Plaintiffs' halfhearted attempt to masquerade their 'gross negligence' claim as one at law," the claim was "the same as a claim that he or she breached his or her fiduciary duty of care," which had been dismissed for lack of subject matter jurisdiction.[40]

"Delaware courts look beyond mere form to the substance of the pleadings when determining subject matter jurisdiction."[41]  As stated in the Counterclaim, the "duty of reasonable care" Schweitzer allegedly owed LCR Capital existed "[b]y virtue of his position as Chief Financial Officer for LCR Capital."[42]

---

[38] *See Prospect Street Energy, LLC v. Bhargava*, 2016 WL 446202, at *4 (Del. Super. Aug. 12, 2015) (citing *QC Commens Inc. v. Quartarone*, 2013 WL 1970069, at *1 (Del. Ch. May 14, 2013).

[39] *See* LCR Capital's Opp'n to Mot. to Dismiss ¶ 1.

[40] *Prospect Street Energy*, 2016 WL 446202, at *7.

[41] *Albert v. Alex. Brown Mgmt.*, 2004 WL 2050527, at *3 (Del. Super. Sept. 15, 2004).

[42] Countercl. Count I ¶ 3, Count II ¶ 3.

LCR Capital's pleadings clearly state that Schweitzer "acted as an agent and fiduciary of LCR Capital" in his role as CFO, which implicates the duty of care owed by a fiduciary. LCR Capital cannot circumvent the Court's lack of subject matter jurisdiction by labeling their claim "negligence" instead of "gross negligence" or "breach of fiduciary duty." The supporting facts are the same for both Count I and Count II. Although LCR Capital correctly asserts that multiple causes of action may arise from the same set of facts, here, these claims are based on facts establishing a *fiduciary relationship*. The Court does not have subject matter jurisdiction over such claims.[43] Schweitzer's Motion to Dismiss Count II of LCR Capital's Counterclaim is granted.

### 6. Rajan has not brought a claim against Schweitzer for Breach of Implied Covenant of Good Faith and Fair Dealing.

Because only LCR Capital is bringing this claim against Schweitzer, Schweitzer's Motion to Dismiss on this count need not be addressed. Rajan has represented to the Court that he has not brought any counterclaims against Schweitzer, despite the references to Rajan in LCR Capital's counterclaims.[44]

---

[43] *See Prospect Street Energy*, 2016 WL 446202, at *4 (citing *QC Commens Inc.*, 2013 WL 1970069, at *1 ("This states a claim for breach of fiduciary duty, an equitable claim—perhaps *the* quintessential equitable claim.")). *See also McMahon v. New Castle Assocs.*, 532 A.2d 601, 604 (Del. Ch.1987) ("Among the most ancient of headings under which chancery's jurisdiction falls is that of fiduciary relationships.")

[44] Tr. 62:2–4; Def.'s Suppl. Br. ¶ 13.

Schweitzer has not moved to dismiss LCR Capital's claim for Breach of Implied Covenant of Good Faith and Fair Dealing.

### 7. LCR Capital fails to state a claim for defamation.

In order to state a claim for defamation, LCR Capital must allege facts in support of each of the following elements: (1) the defamatory character of the statement; (2) publication of the statement to a third party; (3) the statement refers to LCR Capital; (4) the third party's understanding of the statement's defamatory character; and (5) injury.[45]  Generally, oral defamation, or slander, is not actionable without special damages.[46]  However, statements that fall under a slander *per se* category are not required to be pleaded with special damages.[47]  LCR Capital is alleging that the defamatory statements here fall under the first category of statements which "malign one in a trade, business or profession."[48]

Allegations that are "merely conclusory" and lack "specific allegations of fact to support them […] may be deemed insufficient to withstand a motion to dismiss."[49] The Counterclaim need only give "general notice as to the nature of the claim

---

[45] *Read v. Carpenter*, 1995 WL 945544, at *2 (Del. Super. June 8, 1995).
[46] *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978).
[47] *Id*.
[48] Countercl. Count Four ¶¶ 2, 4; See *Spence v. Funk*, at 970.
[49] *Orthopaedic Associates of Southern Delaware, P.A. v. Pfaff*, 2018 WL 822020, at *2 (Del. Super. Feb. 9, 2018) (citing *Lord v. Souder*, 748 A.2d 393, 398 (Del. 2000)).

asserted against [Schweitzer]."[50]  However, the claim "must, at a minimum, provide the Court with enough information to conduct a meaningful consideration of the merits."[51]

Although the pleading threshold is low, LCR Capital must still allege facts to support each element of a defamation claim in order to survive a 12(b)(6) motion to dismiss.  It is true that "even silly or trivial" defamation claims *can* survive a motion to dismiss—this particular claim, however, does not.[52]  In failing to allege *factual* support for every element of defamation, LCR Capital has failed to state a claim for defamation.

In *Abbott v. Gordon*, the Court faced a similarly conclusory allegation of defamation.[53]  The Court found that general allegations that the defendants, "through spoken and written word, made and published numerous false statements of fact regarding Abbott" and "falsely accused Abbott of unethical conduct in telephone calls and mass mailings," was not sufficient to enable the Court or defendants "to determine whether the statements were defamatory to Abbott, whether they were

---

[50] *Id.* (citing *Diamond State Telephone v. University of Delaware*, 269 A.2d 52, 58 (Del. 1970)).

[51] *Harrison v. Hodgson Vocational Technical High School*, 2007 WL 3112479, at *2 (Del. Super. Oct. 3, 2007).

[52] *See Doe v. Cahill*, 884 A.2d 451, 459 (Del. 2005).

[53] *Abbott v. Gordon*, 2008 WL 821522 (Del. Super. Mar. 27, 2008) *aff'd* 2008 WL 3919846 (Del. Aug. 27, 2008).

actually published, whether the public would understand them as defamatory, or whether they were false."[54]

Here, the most the Court can glean from LCR Capital's pleading is that Schweitzer has falsely stated "that LCR Capital has engaged in unlawful conduct in running the affairs of the company."[55] There are no facts indicating, even generally, to whom this statement was made, how this statement was understood or the impact this statement on LCR Capital. Stating the elements of a claim in the affirmative is not a substitute for alleging facts to support a finding of the elements of a claim. Schweitzer's Motion to Dismiss as to Count IV of LCR Capital's Counterclaim is, therefore, granted.

## CONCLUSION

For the foregoing reasons, Mr. Rajan's Motion to Dismiss is **GRANTED**. LCR Capital's Motion to Dismiss is **GRANTED** as to Mr. Schweitzer's Second and Fourth Causes of Action and **DENIED** as to the Third Cause of Action. Mr. Schweitzer's request to replead his Fourth Cause of Action is **GRANTED**. Mr. Schweitzer's Motion to Dismiss is **GRANTED**. **IT IS SO ORDERED**.

_____
Meghan A. Adams, Judge

---

[54] *Id.* at *24.
[55] Countercl. Count Four ¶ 2.

25