**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

Patricia W. Griffin
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Date Submitted:     June 13, 2022
Final Report:       July 12, 2022

Christopher J. Isaac, Esquire
Offit Kurman, P.A.
222 Delaware Avenue
Suite 1105
Wilmington, Delaware 19801

Catherine M. Cramer, Esquire
J. Garrett Miller, Esquire
Baird Mandalas Brockstedt Federico
& Cardea, LLC
2711 Centerville Road, Suite 401
Wilmington Delaware, 19808

Re:    *ATO Enterprises of Delaware, LLC a/k/a ATO Enterprises v. Jenniffer
Cabrera*
C.A. No. 2021-0966-PWG

Dear Counsel:

Pending before me is a motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. In the complaint, a Delaware limited liability company alleges that a former employee breached her fiduciary duties by improperly accessing the company's payroll system and issuing herself $41,538.42 through a direct deposit transaction. The former employee was served under Delaware's Long Arm Statute. I conclude that this Court has subject matter jurisdiction over this matter but the complaint fails to allege acts committed by the former employee in Delaware or any business she transacted in Delaware, so that service under Delaware's Long Arm Statute fails. The company also failed to perfect service under either the Corporate Consent Statute or the LLC

Consent Statute. I recommend that the Court grant the motion to dismiss for lack of personal jurisdiction. This is a final report.

## I.    Background

On November 10, 2021, ATO Enterprises of Delaware, LLC ("ATO") filed the Verified Complaint ("Complaint") against Jenniffer Cabrera ("Cabrera"), claiming breach of fiduciary duty, unjust enrichment, breach of implied covenant of good faith and fair dealing, and fraud.[1] The Complaint seeks a declaration that Cabrera breached her fiduciary duties to ATO, an accounting from Cabrera, money damages, and attorneys' fees and costs.[2]

The Complaint alleges that "Cabrera worked for ATO for several years in a management role."[3] In this capacity, Cabrera "was entrusted with ATO's financial information, processed payments …, supervised the maintenance of ATO's real estate holdings[,] and distributed equity accordingly by managing member(s) of the firm."[4] Cabrera's duties included "signing all lease agreements, paying the company bills, and general property management duties."[5] Cabrera received a variety of

---

[1] Docket Item ("D.I.") 1. In this Report, I refer to the transcript of the June 13, 2022 oral argument, D.I. 17, as "Tr."

[2] *Id.*, at 8.

[3] *Id.*, at 2.

[4] *Id*.

[5] *Id*.

benefits as compensation but no salary.[6]  At one time, she lived with, and was personally involved with, ATO's owner.[7]  The Complaint alleges that ATO terminated her employment in 2018.[8]  Prior to her termination, Cabrera purportedly added herself to the payroll system and made an unauthorized direct deposit to herself in the amount of $41,538.42, and "ATO management did not know or have reason to know of this theft until it learned that she admitted to taking this money during the discovery process of an unrelated matter in Florida."[9]  The Complaint alleges that "[s]ubsequent to her departure from ATO, [Cabrera] obtained confidential ATO records, documents and papers without proper authorization, and made attempts to access company electronic systems and records."[10]

Cabrera was served pursuant to Delaware's long-arm statute on or around November 22, 2021.[11]  On December 20, 2021, Cabrera moved to dismiss the Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted ("Motion").[12]  Cabrera filed

---

[6] *Id.*

[7] *Id.*, ¶ 2.

[8] *Id.*, at 2.

[9] *Id.*, ¶ 7.

[10] *Id.*, ¶ 8.

[11] D.I. 2; D.I. 3; D.I. 4; D.I. 5.

[12] D.I. 7.

an opening brief in support of the Motion on January 14, 2022.[13]  ATO filed an

answering brief in opposition to the Motion on February 15, 2022.[14]  Cabrera filed a

reply brief in support of the Motion on February 28, 2022.[15]  I held oral argument on

the Motion on June 13, 2022.[16]

## II.    Analysis

### A. *The Court has Subject Matter Jurisdiction over the Claims*

The first issue is whether this Court has subject matter jurisdiction over ATO's

claims.  "The Court of Chancery will dismiss an action under Rule 12(b)(1) if it

appears from the record that the Court does not have subject matter jurisdiction over

the claim."[17]  "On a motion to dismiss for want of jurisdiction, the plaintiff bears the

burden to make out a *prima facie* case establishing jurisdiction," which requires the

"production of enough evidence to allow the fact-trier to infer the fact at issue and

rule in the party's favor."[18]  "[T]he Court of Chancery can acquire subject matter

jurisdiction over a cause in only three ways, namely, if: (1) one or more of the

---

[13] D.I. 10

[14] D.I. 12.

[15] D.I. 13.

[16] D.I. 16.

[17] *Envo, Inc. v. Walters*, 2009 WL 5173807, at *4 (Del. Ch. Dec. 30, 2009) (internal quotation marks and citations omitted), *aff'd*, 2013 WL 1283533 (Del. Mar. 28, 2013).

[18] *Baier v. Upper New York Investment Co. LLC, et al.,* 2018 WL 1791996, at *5 (Del. Ch. Apr. 16, 2018) (internal quotation marks and citations omitted).

plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[19] "In deciding whether or not equitable jurisdiction exists, the Court must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim."[20] The analysis "is based upon the allegations made in the complaint, taken as true; however, a mere allegation that there is no adequate remedy at law is insufficient to end the inquiry if such allegation is a mere façade."[21]

Cabrera argues that the Complaint fails to state an equitable claim or a need for an equitable remedy because ATO seeks money damages and has an adequate remedy at law.[22] She further contends that an accounting is unnecessary.[23] ATO

---

[19] *Endowment Rsch. Grp., LLC v. Wildcat Venture Partners, LLC*, 2021 WL 841049, at *6 (Del. Ch. Mar. 5, 2021) (internal quotation marks and citation omitted).

[20] *Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (citations omitted).

[21] *Athene Life & Annuity Co. v. Am. General Life Ins. Co.*, 2019 WL 3451376, at *4 (Del. Ch. Jul. 31, 2019) (citations omitted); *see also Int'l Bus. Machines Corp. v. Comisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991).

[22] D.I. 7, ¶ 15; D.I. 10, at 7-10.

[23] D.I. 10, at 9; D.I. 13, at 6-8. Having found equitable jurisdiction exists on other grounds, I do not need to address whether the request for the accounting discloses a genuine need for equitable relief.

responds that its claim is equitable because Cabrera breached the fiduciary duties she owed as "Manager of ATO."[24]

Here, having evaluated the substance of ATO's claims for purposes of the motion to dismiss for lack of subject matter jurisdiction, I am satisfied that they are sufficient to invoke equitable jurisdiction. ATO has invoked an equitable claim by pleading a breach of fiduciary duty. "[B]reach of fiduciary duty [is] an equitable claim—perhaps *the* quintessential equitable claim."[25] Accordingly, by this invocation of an equitable claim, "equitable jurisdiction exists."[26] The Complaint's factual allegations posit that a fiduciary relationship existed between Cabrera and ATO,[27] which serves as a basis for ATO's equitable claim for breach of fiduciary duty.[28]

---

[24] D.I. 12, at 4-6.

[25] *QC Commc'ns, Inc. v. Quartrone*, 2013 WL 1970069, at *1 (Del. Ch. May 14, 2013) (emphasis in original) (citation omitted).

[26] *Id*.

[27] D.I. 1, ¶¶ 6-7, 10 (Cabrera was a "manager level employee"). I need not resolve at this stage whether fiduciary duties allegedly arise from Cabrera's status with ATO or as a common law fiduciary. *See Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *9-10 (Del. Ch. May 18, 2009).

[28] Cabrera also contends that there is no case or controversy because there is no longer a legal relationship between ATO and Cabrera, rendering the fiduciary duty claims moot. *See* D.I. 10, at 15-16; Tr. 21:16-22:12. Persons who formerly owed fiduciary duties may be sued for breach of those duties or other relief. *E.g.*, *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 143 (Del. Ch. 2004). Thus, there is a live case or controversy.

*B. The Court does not have Personal Jurisdiction over Cabrera*

Next, I consider whether this Court has personal jurisdiction over Cabrera, a nonresident of Delaware. "In ruling on a 12(b)(2) motion, the court may consider the pleadings, affidavits, and any discovery of record," but where "no evidentiary hearing has been held, plaintiffs need only make a prima facie showing of personal jurisdiction" on a record construed "in the light most favorable to the plaintiff."[29] "Because a motion under Rule 12(b)(2) presents factual and legal questions, a court cannot grant it 'simply by accepting the well pleaded allegations of the complaint as true, because the pleader has no obligation to plead facts that show the amenability of the defendant to service of process."[30] "The court engages in a two-step analysis: the court must first determine that service of process is authorized by statute and then must determine that the exercise of jurisdiction over the nonresident defendant comports with traditional due process notions of fair play and substantial justice."[31]

---

[29] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007) (internal quotation marks and citations omitted).

[30] *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *2 (Del. Ch. Sept. 18, 2019) (quoting *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1131 (Del. Ch. 2008)).

[31] *Ryan*, 935 A.2d at 265; *see also Reid v. Siniscalchi*, 2018 WL 620475, at *14 (Del. Ch. Jan. 30, 2018) ("… the court must determine whether exercising personal jurisdiction over the nonresident defendant is consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution") (citation omitted); *Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, 2005 WL 578972, at *3 (Del. Ch. Mar. 3, 2005). Because I conclude that there is no statutory basis for personal jurisdiction over Cabrera here, I do not reach the constitutional analysis.

Cabrera argues that jurisdiction under Delaware's long arm statute is inappropriate because the Complaint makes no allegation that Cabrera has had any contacts in Delaware that would satisfy the requirements of Delaware's long arm statute, 10 *Del. C.* §3104 ("Long Arm Statute"), or the constitutional due process standards.[32] Cabrera states that her only connection to Delaware was being employed by a company registered in Delaware.[33] ATO answers that personal jurisdiction is proper under 10 *Del. C.* §3114 ("Corporate Consent Statute") based upon Cabrera's position as manager of ATO and as trustee of the Managing Member's Trust.[34] In reply, Cabrera argues that the Complaint makes no allegations that she was an officer of a Delaware corporation so that the Corporate Consent Statute is inapplicable.[35]

1. Personal Jurisdiction over Cabrera under the Long Arm Statute

Cabrera was served under the Long Arm Statute.[36] In pertinent part, that statute states:

---

[32] D.I. 10, at 11-13.

[33] *Id.*, at 12.

[34] D.I. 12, at 6-11. At oral argument, ATO's counsel represented that this trust is a Cayman Islands trust, not a Delaware trust. Tr. 45:1-2. Additionally, no claims have been brought regarding any fiduciary duties that Cabrera may have owed to this trust. *See* D.I. 1.

[35] D.I. 13, at 8-9.

[36] D.I. 4; D.I. 5.

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, … who in person or through an agent:
>> (1) Transacts any business or performs any character of work or service in the State;
>> (2) Contracts to supply services or things in this State;
>> (3) Causes tortious injury in the State by an act or omission in this State;
>> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
>> (5) Has an interest in, uses or possesses real property in the State; or
>> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.[37]

"The Delaware Supreme Court has made clear that trial courts must give a broad reading to the terms of the long-arm statute, in order to effectuate the statute's intent to ensure that this state's court may exercise jurisdiction to the full limits permissible under the Due Process Clause."[38]

The Complaint makes no allegations that Cabrera transacted any business within the State of Delaware, committed any other act within the State of Delaware, or owns an interest in real property in Delaware. It appears that Cabrera is a citizen

---

[37] 10 *Del. C.* § 3104.

[38] *Sample v. Morgan*, 935 A.2d 1046, 1056 (Del. Ch. 2007) (citing *Hercules Inc. v. Leu Trust and Banking (Bahamas) Ltd.,* 611 A.2d 476, 480–81 (Del. 1992)).

of Florida and her work with ATO may have included managing rental properties in New York, New Jersey, and Pennsylvania.[39] Where an employee of a Delaware entity does not reside in Delaware, work for the entity in Delaware, or commit an act in Delaware, Delaware courts will not have personal jurisdiction over the employee through the Long Arm Statute.[40] Therefore, there is no basis for personal jurisdiction over Cabrera under the Long Arm Statute, and the motion to dismiss for lack of personal jurisdiction should be granted.

2.  Personal Jurisdiction over Cabrera under the Corporate Consent Statute

In its answering brief, ATO argues that personal jurisdiction exists under the Corporate Consent Statute.[41] Cabrera responds that the Corporate Consent Statute is not applicable because she was not an officer of ATO as defined under that statute.[42] Under the Corporate Consent Statute, officers, trustees and directors of a Delaware corporation "are deemed to have consented to personal jurisdiction in this state in two situations: for actions alleging breach of their duty to the corporation and its stockholders; or where litigation is brought in Delaware involving the

---

[39] D.I. 1, ¶¶ 1-2.

[40] *See In re Am. Int'l Grp.*, 965 A.2d 763, 814-16 (Del. Ch. 2009). At oral argument, ATO did not argue that the Long Arm Statute was the appropriate basis for service of process. *See* Tr. 66:14-67:16.

[41] D.I. 12, at 6-11.

[42] D.I. 13, at 9.

corporation, to which the officer is a necessary or proper party."[43]  This statute is inapplicable.  ATO is not a Delaware corporation; it is a Delaware Limited Liability Company ("LLC").[44]  Therefore, I find the Corporate Consent Statute does not apply.[45]

    3.  <u>Personal Jurisdiction over Cabrera under the LLC Consent Statute</u>

While neither party raised this in briefing, there is an analogous consent statute for limited liability companies, 6 *Del. C.* § 18-109 ("LLC Consent Statute").  The LLC Consent Statute "authorizes service of process on the managers of limited liability companies formed under the laws of this State."[46]  It provides that "when a nonresident accepts a position as manager of a Delaware LLC, the nonresident

---

[43] *BAM Int'l, LLC v. MSBA Grp. Inc.*, 2021 WL 5905878, at *1 (Del. Ch. Dec. 14, 2021).

[44] D.I. 1, ¶ 1.  Further, the Complaint does not allege that Cabrera is an officer as defined under 10 *Del. C.* §3114(b). *See* D.I. 1.

[45] Even if the Corporate Consent Statute would apply, ATO could not avail itself of the Corporate Consent Statute.  ATO did not follow the statutory requirements for service of process under the Corporate Consent Statute.  Under the Corporate Consent Statute, service of process is effected "by serving the registered agent" of the Delaware corporation and by the Register in Chancery mailing copies of the process to the corporation's principal place of business and at the residence address of the director or officer. 10 *Del. C.* § 3114(c). Cabrera was served under the statutory procedures of the Long Arm Statute, not the Corporate Consent Statute. D.I. 4; D.I. 5.

[46] *In re Mobilactive Media, LLC*, 2013 WL 297950, at *29 (Del. Ch. Jan. 25, 2013).  At oral argument, Cabrera contended that the LLC Consent Statute offers "a manner through which the designated representative of an organization agrees to accept service of process for the company, not from the company." Tr. 7:24-8:4.  I disagree with this interpretation. *See* 6 *Del. C.* § 18-109(a); *Mobilactive Media, LLC*, 2013 WL 297950, at *29-30. *Compare* 6 *Del. C.* § 18-105 (authorizing service of process on a domestic LLC itself).

consents that service upon his statutory agent will amount to *in personam* jurisdiction over him for any claims covered by the statute."[47] "The term 'manager' [for purposes of the LLC Consent Statute] includes both formal managers and acting managers."[48] "A formal manager is designated as such in the [LLC's] governing documents. An acting manager is not formally designated as a manager in the entity's governing documents but participates materially in the management of the limited liability company."[49] "[A]n individual must take a meaningful part or play a significant role in management of a [LLC] in order to qualify as an acting manager."[50] "This court has found that a defendant participated materially in the management of a [LLC] … when the defendant: (1) served as an officer of the [LLC] and ran its day-to-day operations, (2) performed actions within the exclusive purview of a manager, or (3) conceded that he materially participated in the management of the [LLC] in question."[51]

---

[47] *Assist Stock Mgmt. LLC v. Rosheim*, 753 A.2d 974, 982 (Del. Ch. 2000).

[48] *Dlayal Hldgs., Inc. v. Marwin Al-Bawardi*, 2021 WL 6121724, at *4 (Del. Ch. Dec. 27, 2021) (citations omitted).

[49] *Id.*, at *4 (internal quotation marks and citations omitted).

[50] *Id.*, at *5.

[51] *Id.*

Here, the Complaint does not allege that Cabrera was designated in ATO's operating agreement as a manager.[52] Therefore, she is not amenable to service of process because she is a formal manager under the LLC Consent Statute.

In briefing, ATO argues that Cabrera was akin to a "chief executive officer, chief financial officer, or chief operations officer."[53] But, the Complaint is ambiguous as to whether Cabrera was an acting manager of ATO. Although the

---

[52] *See* D.I. 1. ATO's LLC agreement was not provided to the Court. At oral argument, ATO's counsel indicated that he did not have "the opportunity to review the [LLC] agreement" and speculated that ATO has no LLC agreement. Tr. 43:15-17. Cabrera indicated that she did not have a copy of ATO's LLC agreement. *Id.* 13:10-14. If there is no LLC agreement, then management of the LLC is vested in the members of the LLC. 6 *Del. C.* § 18-402. And, the Complaint does not allege that Cabrera is a member of ATO. *See* D.I. 1.

At oral argument, ATO argued that Cabrera was the manager of a "series of limited liability company" under the definition in 6 *Del. C.* § 18-101(12) because she was "designated or appointed to be a manager of associated LLCs." Tr. 40:1-18. However, the creation of a "series" under the Delaware Limited Liability Company Act requires its designation as such in a written LLC agreement (and possibly additional filings with the relevant authorities). *See* 6 *Del. C.* §§ 18-215, 18-218, 18-219, 18-220, 18-221; *see also* 6 *Del. C.* § 18-101(16)-(18). There are no allegations in the Complaint that ATO is part of any such series, and it appears that ATO may not even have an LLC agreement. *See* D.I. 1; Tr. 43:15-17.

[53] D.I. 12, at 12. ATO further advanced this position at oral argument, alleging that Cabrera ran ATO for "several months or years at a time" while ATO's managing member was out of the country. Tr. 53:4-7; *see also id.* 49:11-50:7. ATO's additional contentions at oral argument and in its answering brief are not pleaded or supported by affidavit. On a motion to dismiss, the court is not permitted to look outside of the complaint for facts to support the complaint. *See Shintom Co. v. Audiovox Corp.*, 2005 WL 1138740, at *4 n. 8 (Del. Ch. May 4, 2005). Focusing only on the well-pleaded factual allegations of the Complaint, I do not find the inferences that ATO advanced in its briefing and at oral argument to be reasonable.

Complaint suggests that Cabrera exercised some managerial authority while employed at ATO,[54] the reasonable inference to draw from the Complaint taken as a whole is that Cabrera was an employee of ATO and did not exercise control over the entity. The Complaint describes Cabrera as a "manager level employee,"[55] a "property manager,"[56] a "trustee,"[57] as having a "management role,"[58] as not being part of "ATO management,"[59] as "never receiv[ing] a salary,"[60] and as being "employed" by ATO.[61] While the Complaint alleges that Cabrera was entrusted by ATO with certain tasks and had certain contract authority for ATO,[62] the Complaint does not allege material participation in ATO's management by Cabrera, or that she "made decisions for the entity" without the direction of an officially-designated manager.[63] Therefore, the LLC Consent Statute is inapplicable because the Complaint neither pleads that Cabrera was formally named as a manager pursuant

---

[54] *E.g.*, D.I. 1, ¶ 6.

[55] *Id.*, ¶ 10.

[56] *Id.*, ¶ 5.

[57] *Id.*

[58] *Id.*, at 2.

[59] *Id.*, ¶ 7.

[60] *Id.*, at 2.

[61] *Id.*, ¶ 4.

[62] *Id.*, ¶ 6.

[63] *Cf. Metro Storage Int'l LLC v. Harron*, 2019 WL 3282613, at *8-11 (Del. Ch. July 19, 2019).

to ATO's operating agreement, nor pleads facts from which the Court can infer that

Cabrera was an acting manager of ATO.[64]

## C. *Attorneys' Fees*

Both parties have requested attorneys' fees.[65] Cabrera argues that ATO acted

in bad faith when Dalembert verified the Complaint, which stated that Cabrera was

terminated from her position at ATO in 2018 and ATO management did not have

reason to know of Cabrera's taking of monies until the summer of 2020.[66] In

contrast, a subsequent filing by ATO indicated that Cabrera was terminated in 2017

and the payroll information documenting her alleged theft had a "run date" of

September 7, 2018.[67] ATO responds that the Complaint was filed in good faith.[68]

"Delaware follows the 'American Rule,' which provides that each party is

generally expected to pay its own attorneys' fees regardless of the outcome of the

---

[64] Even if the LLC Consent Statute could apply in this instance, ATO has not availed itself of the LLC Consent Statute by following its statutory requirements. Under the LLC Consent Statute, service of process must be effected "by serving the registered agent" of the LLC and by the Register in Chancery mailing the process to the manager. 6 *Del. C.* § 18-109(b). Cabrera was served under the statutory procedures of the Long Arm Statute, not the LLC Consent Statute. D.I. 4; D.I. 5.

[65] *See* D.I. 1, at 8; D.I. 10, at 22-23.

[66] D.I. 10, at 23; *see also* D.I. 1, at 2, 4.

[67] *See* D.I. 12, Ex. A.

[68] D.I. 12, at 19.

litigation,"[69] absent express statutory language to the contrary or an equitable doctrine exception, such as the bad faith exception.[70] "The bad faith exception is applied in 'extraordinary circumstances' as a tool to deter abusive litigation and to protect the integrity of the judicial process."[71] I find insufficient evidence to conclude that either party's actions implicated the bad faith exception or other exception to the American Rule, and I recommend that the Court decline to shift fees.

### III. Conclusion

For the reasons set forth above, I recommend that the Court deny Cabrera's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) but grant her motion to dismiss the Complaint under Rule 12(b)(2) for lack of personal jurisdiction. Because I so recommend, I do not address her motion to dismiss for

---

[69] *Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017); *see also ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 558 (Del. 2014); *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007).

[70] Delaware courts have awarded attorney's fees for bad faith when "parties have unnecessarily prolonged or delayed litigation, falsified records or knowingly asserted frivolous claims." *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 506 (Del. 2005) (citing *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 546 (Del. 1998)); *see also RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 877 (Del. 2015) (citation omitted).

[71] *Montgomery Cellular Holding Co. v. Dobler*, 880 A.2d 206, 227 (Del. 2005) (citation omitted).

the failure to state a claim under Rule 12(b)(6).[72]  This is a final master's report, and

exceptions may be taken under Court of Chancery Rule 144.

<div style="margin-left:40%">

Sincerely,

*/s/ Patricia W. Griffin*

Master in Chancery

</div>

---

[72] *See Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 40 (Del. 1996) ("As a general rule, jurisdictional matters should be decided before substantive matters.")(citation omitted).